Marc Andrew MARIO, Plaintiff–Appellant,

v.

**P & C FOOD MARKETS, INC.,** Defendant–Appellee.

**Docket No. 01–9220.**

United States Court of Appeals, Second Circuit.

Argued: June 21, 2002.

Decided: Dec. 20, 2002.

---

Andrea R. Polvino, McGrath & Polvino, Williamsville, NY, for Plaintiff–Appellant.

Thomas J. Grooms, Bond, Schoeneck & King, LLP, Syracuse, NY, for Defendant–Appellee.

Sara Pikofsky, Trial Attorney (Eugene Scalia, Solicitor of Labor, Timothy D. Hauser, Associate Solicitor, Elizabeth Hopkins, Counsel for Special Litigation), Washington, D.C., for United States Department of Labor as amicus curie on behalf of Appellee.

Before: McLAUGHLIN, CALABRESI, and B.D. PARKER, Jr., Circuit Judges.

CALABRESI, Circuit Judge.

Plaintiff-appellant Marc Andrew Mario appeals from a judgment of the United States District Court for the Western District of New York (Richard J. Arcara, *Judge*) dismissing his complaint against his employer, defendant-appellee P & C Food Markets, Inc. ("P & C"). Mario alleged that P & C had unlawfully denied him health insurance coverage for gender reassignment surgeries that he had undergone, and he asserted claims under §§ 502 and 510 of the Employee Retirement Income and Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132, 1140, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and Section 296 of the New York Human Rights Law, N.Y. Executive Law §§ 296 *et seq.*

This case was assigned to Magistrate Judge Edmund F. Maxwell. Following discovery, the parties cross-moved for summary judgment. The magistrate judge issued a report and recommendation that P & C's motion be granted. Applying an "arbitrary and capricious" standard of review to P & C's denial of Mario's requests for reimbursement, the magistrate judge concluded that the denial was supported by substantial evidence. The magistrate also recommended the dismissal of Mario's gender-based discrimination claims on the basis that Mario had failed, inter alia, to demonstrate that P & C's proffered reason for the denial of coverage—lack of medical necessity—was pretextual. The district court adopted the report and recommendation and granted summary judgment in favor of P & C. Mario appealed, and we affirm on somewhat different grounds from those given by the district court.

## I. BACKGROUND

Marc Mario was born in 1955 as Margo Mario, a female, and began working for P

& C in 1992 as a supervising pharmacist. Mario suffers from gender dysphoria and transsexualism, which he describes as "a condition that exists when a physiologically normal person experiences discomfort or discontent about nature's choice of his or her particular sex and prefers to be the other sex." Beginning in the mid–1990s, Mario decided to begin the transformation process from female to male. Mario advised P & C of his decision and, with P & C's permission, began to dress and present himself as a male. P & C acknowledged plaintiff's name change from "Margo" to "Marc." Around the same time, Mario began to receive hormone therapy. In September 1996, he underwent a bilateral mastectomy, and in October 1997, a hysterectomy.

Throughout his employment, Mario was covered by P & C's self-funded health insurance plan (the "Plan"), which is governed by ERISA. In 1996, following his hormone therapy and mastectomy, he sought reimbursement from the Plan. The Plan excludes coverage for services that are deemed not "medically necessary." After reviewing and investigating Mario's submissions, P & C denied the claims for lack of medical necessity, and indicated that any future claims for services or procedures related to Mario's gender reassignment would also be denied.

ERISA requires that participants in an ERISA-covered employee benefit plan be furnished with a Summary Plan Description ("SPD"), 29 U.S.C. § 1022(a) (2000). The purpose of the SPD is to describe, in summary form, the benefits available under the plan, as well as the rights and obligations of plan participants. The SPD, which was distributed to P & C employees, including Mario, provides that "[s]hould there be any questions or conflicts within this booklet, they will be governed by the terms of the contract between P & C Foods[ ] and North American Administrators, Inc." The referenced contract is the Administrative Services Agreement ("ASA") between P & C's parent corporation, The Penn Traffic Company ("Penn Traffic") and North American Administrators ("NAA"), the third-party plan administrator. The ASA outlines the respective responsibilities of NAA and P & C[1] as plan administrator and fiduciary as follows:

> NAA will determine the entitlement to Plan benefits for any request for benefits ... *provided, however, that [P & C] is the named fiduciary of the Plan and, as such, maintains discretionary authority to review all denied claims for benefits* under the Plan. If at any time NAA is in doubt as to *the proper interpretation of the Plan with respect to eligibility for benefits or otherwise,* it shall promptly notify [P & C], which shall render its judgment on the interpretation to be followed by NAA.

ASA, Section III.2 (emphasis added).[2]

After Mario received notice from P & C that coverage for his hormone therapy and mastectomy would be denied and that any further claims related to his gender reassignment would also be denied, Mario sued P & C claiming that the denial of benefits violated ERISA, Title VII, and New York

---

1. The document refers to Penn Traffic, of which P & C is a division.

2. Although the ASA refers to P & C as fiduciary and to NAA as plan administrator, the SPD names P & C as plan administrator and P & C functioned in that capacity. P & C exercised decision-making authority with respect to eligibility for benefits in general, and in particular with respect to claims as to which eligibility for coverage was uncertain. NAA served in an advisory capacity, if it participated at all, in the eligibility determination process and was primarily responsible for processing claims.

state law. A threshold inquiry was whether P & C's denial of benefits was subject to deferential or de novo judicial review. On the parties' cross-motions for summary judgment, the magistrate found, and the district court agreed, that an "arbitrary and capricious" standard of review applied. Employing that standard, the district court granted P & C's motion for summary judgment. The court concluded that all the information the plan administrator had received from doctors, medical institutions, and insurance carriers sufficiently supported the conclusion that the gender reassignment surgery was not medically necessary and, consequently, was not covered by the Plan. With respect to the Title VII claim, the magistrate judge concluded that, assuming (but not deciding) that the denial of health benefits constituted an adverse employment action, Mario had not demonstrated that he was a member of a protected class. The magistrate also concluded that the circumstances of the denial did not give rise to an inference of discrimination, and that P & C's reasons for the denial were not pretextual. The district court agreed, and entered summary judgment in favor of P & C. This appeal followed.

## II. DISCUSSION

■ "On appeal from a grant of summary judgment we review the record de novo to determine whether genuine issues of material fact exist requiring a trial." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir.2001) (citation omitted). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where there are no disputed issues of material fact, "our task is to determine whether the district court correctly applied the law." *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir.1995) (citation omitted).

## A. The ERISA Claim

■ We first note that there is some uncertainty as to the standard of review applicable to P & C's denial of Mario's medical claims. In *Firestone Tire & Rubber Co. v. Bruch*, the Supreme Court held that "a denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). But if the plan does grant such discretionary authority to its administrator, a reviewing court should defer to that authority, and evaluate the plan administrator's decisions under an "arbitrary and capricious" standard. *Pagan*, 52 F.3d at 441.[3]

■ The language in the ASA reserving to P & C "discretionary authority to review all denied claims for benefits under the Plan," and providing that questions "as to the proper interpretation of the Plan with respect to eligibility for benefits or otherwise" should be referred to P & C for resolution, is sufficient under our cases to trigger the "arbitrary and capricious" standard of review. *See Ganton Techs., Inc. v. Nat'l Indus. Group Pension Plan,*

**3.** The correctness—and wisdom—of the *Firestone* decision, permitting plan administrators, in effect, to provide for an "arbitrary and capricious" review standard, has been cogently challenged by the country's leading ERISA scholar. *See* John H. Langbein, *The Supreme Court Flunks Trusts*, 1990 SUP.CT. REV. 207. Whatever the merits of that criticism, however, we are, of course, bound to follow *Firestone*.

76 F.3d 462, 466 (2d Cir.1996) (applying the arbitrary and capricious standard of review to trustees' interpretation of the plan where the plan documents gave the trustees authority to "resolve all disputes and ambiguities relating to the interpretation of the Plan, and the application of the terms of the Plan to any circumstances[,] and the decisions of the [trustees] in all such matters will be final"); *Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1269–71 (2d Cir.1995) (applying the arbitrary and capricious standard of review to a plan providing that retirement committee "shall pass upon all questions concerning the application or interpretation of the provisions of the Plan" and noting that the committee had the power of "interpretation" and must therefore "evaluate and determine facts," an "inherently ... judgmental function") (citations and internal quotation marks omitted).

■ On the other hand, that delegation of discretionary authority is not described, or even mentioned, in the SPD. As we have previously noted, ERISA contemplates that the SPD is "an employee's primary source of information regarding employment benefits, and employees are entitled to rely on the descriptions contained in the summary." *Layaou v. Xerox Corp.*, 238 F.3d 205, 209 (2d Cir.2001) (*quoting Heidgerd v. Olin Corp.*, 906 F.2d 903, 907 (2d Cir.1990)). Among the types of information required to be included in the SPD are all "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b). This requirement is reiterated in the regulations issued under § 1022, which explain that the SPD must "clearly identify[ ] circumstances which may result in ... denial ... of any benefits that a participant ... might otherwise reasonably expect the plan to provide." 29 C.F.R. § 2520.102–3(*l*).

It may be argued that the giving of discretion to the plan administrator to interpret the meaning of plan terms is one such circumstance. For example, the plan at issue here excludes from coverage those services that are not "medically necessary." And a plan participant might reasonably expect that the determination of whether a particular service is "medically necessary" would be made by the participant's physician. It might also be reasonable for a plan participant to believe that, if the determination is instead to be made by a plan administrator (who has no medical training and whose employer has a financial incentive to deny coverage), the participant could appeal to a court and stand before that court on equal footing with the plan administrator. In other words, it could be contended that the participant might reasonably expect that the court would consider the question of "medical necessity" on its merits and decide de novo whether the administrator's determination was correct. And if, contrary to that expectation, the plan administrator has the discretion to make the determination, and the court is obligated to defer to that determination so long as it is not "arbitrary and capricious," it could be argued that a "circumstance" exists "which may result in ... denial ... of ... benefits that a participant ... might otherwise reasonably expect the plan to provide." If so, then the SPD should clearly identify the extent of the discretion, if any, granted to the plan administrator.

On the other hand, one might as forcefully maintain that the standard of judicial review is not such a circumstance because it simply fixes the procedure to be followed *after* a denial has occurred, and therefore a plan participant cannot be prejudiced by a lack of knowledge about that procedure. *See, e.g., Martin v. Blue Cross & Blue Shield of VA.*, 115 F.3d 1201, 1205 n. 4 (4th

Cir.1997); *Atwood v. Newmont Gold Co.,* 45 F.3d 1317, 1321–22 (9th Cir.1995). On this reading of the regulations, no mention of the standard of review would be needed in the SPD, so long as the standard is established in other plan documents, here the ASA.

■ Although this question is open to debate, we need not resolve it now because, in the instant case, the plan administrator's determination survives even the broader de novo review. First, as a matter of general insurance law, the insured has the burden of proving that a benefit is covered, while the insurer has the burden of proving that an exclusion applies. *See Morgan Stanley Group Inc. v. New England Ins. Co.,* 225 F.3d 270, 276 & n. 1 (2d Cir.2000) (applying New York insurance law); *Stamford Wallpaper Co. v. TIG Ins.,* 138 F.3d 75, 79 (2d Cir.1998) (applying Connecticut law). Therefore, which party bears the burden of showing medical necessity or its absence depends on the particular plan. Where "medical necessity" is a prerequisite for entitlement to a benefit under an ERISA plan, the burden of proof will generally be on the plan participant. *Juliano v. HMO of New Jersey,* 221 F.3d 279, 287 (2d Cir.2000) (citing *Farley v. Benefit Trust Life Ins. Co.,* 979 F.2d 653, 658–59 (8th Cir.1992)). Where instead lack of medical necessity is set forth in the "exclusions" section of the plan, the burden is usually on the plan sponsor, who must prove that the exclusion applies. *Cf. Fuja v. Benefit Trust Life Ins. Co.,* 18 F.3d 1405, 1408 (7th Cir.1994). This general framework is not particularly helpful in the instant case, however, because the SPD refers to medical necessity both in the summary of benefits (i.e., "covered medical expenses" includes various types of services and supplies "provided such services and supplies are medically necessary") and in the summary of exclusions

(i.e., the "medical plan exclusions" section includes "services or supplies which are not medically necessary").

■ Luckily, however, resolution of this appeal does not require that we answer the burden-of-proof question. Unless the contrary is specified, the term "medical necessity" must refer to what is medically necessary *for a particular patient,* and hence entails an individual assessment rather than a general determination of what works in the ordinary case. But where, as here, the plan administrator presents sufficient evidence to show that a treatment is not medically necessary in the *usual* case, it is up to the patient and his or her physician to show that *this* individual patient is different from the usual in ways that make the treatment medically necessary for *him* or *her.* In other words, assuming arguendo that the burden of showing that a treatment is not medically necessary lies on the plan administrator, that burden is met by a demonstration that, in the ordinary case, the proposed treatment is not medically required. It is met, that is, unless the patient shows that his or her case is the extraordinary one necessitating the treatment.

■ On the record before us, it seems clear that the plan administrator met the burden of showing that the surgeries at issue are not *generically* medically necessary. The record established that the plan administrator, Bernadette Barber, conducted a meaningful investigation into whether Mario's medical claims were eligible for coverage under the Plan. Ms. Barber's investigation included research on the issue of transsexualism, inquiry into the policies of other employers and insurance carriers concerning coverage of gender reassignment procedures, consultation with medical centers having specialized knowledge of transsexualism and sexual reassignment surgeries, and consultation

with medical personnel employed by NAA, including a psychiatrist retained by NAA, Dr. Ivan Fras. Dr. Fras opined that the surgical removal of healthy organs, for no purpose other than gender dysphoria, would fall into the category of cosmetic surgery, and would therefore not be "medically necessary." On the basis of her investigation, Ms. Barber concluded that there was substantial disagreement in the medical community about whether gender dysphoria was a legitimate illness and uncertainty as to the efficacy of reassignment surgery. She therefore denied Mario's claims.

The plaintiff has not, in response, come forward with evidence that his case is different from the ordinary one. Under those circumstances, the plan administrator's determination survives a de novo standard of review.

### B. The Title VII Claim

■ Mario also seeks review of the district court's dismissal of his Title VII claim. P & C contends that Mario's arguments here were waived below when he failed adequately to object to the magistrate's report and recommendation. The Federal Rules of Civil Procedure provide that "[w]ithin 10 days after being served with a copy of [a magistrate's] recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations." Fed.R.Civ.P. 72(b). Local Civil Rule 72.3(a)(3) of the Western District of New York provides that written objections to a magistrate's report "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Where parties receive clear notice of the

consequences, failure timely to object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision. *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir.1989) (per curiam).

■ Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim "[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment." This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim. Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed.R.Civ.P. 72(b) or Local Civil Rule 72.3(a)(3).[4]

■ This conclusion, however, does not dispose of Mario's claim. Where a district court conducts de novo review of an issue that was not raised in objection to magistrate's report, this court may disregard the waiver and reach the merits. *See United States v. Male Juvenile*, 121 F.3d 34, 39 (2d Cir.1997). While the district court did not undertake a searching examination of Mario's Title VII claim, it is not clear that it considered the claim waived, for it indicated, albeit briefly, its agreement with the magistrate on the merits. Because the district court considered the claim on its merits notwithstanding Mario's failure adequately to object, so will we.

---

**4.** Mario says nothing in his objections with respect to his New York Human Rights Law claim. Accordingly, it has not been preserved.

We find the claim fails. In order to survive a motion for summary judgment, a Title VII plaintiff must satisfy a three-part burden-shifting test. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Ordinarily, a plaintiff must first establish a prima facie case of discrimination by showing that (1) he is a member of a protected class; (2) he is competent to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class. *See Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir.2001). If the plaintiff succeeds, a presumption of discrimination arises and the burden shifts to the defendant to proffer some legitimate, nondiscriminatory reason for the adverse decision or action. *Id.* If the defendant proffers such a reason, the presumption of discrimination created by the prima facie case drops out of the analysis, and the defendant "will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir.2000). The plaintiff "must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination." *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097.

Here, Mario claims that he was discriminated against not because he is transsexual, but because he failed to conform to gender stereotypes, which he claims is a form of sex discrimination actionable under Title VII. Specifically, Mario claims

that his employer, having accepted him as a male, denied coverage for medical procedures that are closely identified with being female, and that his claims would have been approved had they been made by female employees. Without passing on the logic of this argument, we note that it is not clear that the denial of benefits, without more, constitutes an adverse employment action. *Cf. Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997); *Torres v. Pisano*, 116 F.3d 625, 639–40 (2d Cir.1997) (requiring "a materially adverse change in the terms and condition of employment" for an adverse employment action). It is also not clear that Mario, as a transsexual, is a member of a protected class. *See Ulane v. Eastern Airlines, Inc.*, 742 F.2d 1081, 1084–85 (7th Cir.), *cert. denied*, 471 U.S. 1017, 105 S.Ct. 2023, 85 L.Ed.2d 304 (1985); *Sommers v. Budget Marketing, Inc.*, 667 F.2d 748, 750 (8th Cir.1982).

We need not reach these questions, however, as Mario fails to make out a prima facie case because he presented no evidence to support his contention that P & C's denial of benefits occurred under circumstances giving rise to an inference of discrimination based on his transsexualism or his failure to conform to gender stereotypes. Moreover, even if Mario had established a prima facie case, P & C proffered a legitimate, nondiscriminatory reason for its actions-namely, that Mario's surgeries were not medically necessary. And Mario has not offered any proof that P & C's proffered reason was pretextual. Accordingly, his Title VII claim fails.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.