**Edward TOCKER, Plaintiff**

v.

**PHILIP MORRIS COMPANIES INC. a/k/a Altria Group, Inc.; Kraft Foods Inc.; General Foods Corp., Defendants**

No. 03 CIV. 5275(SCR).

United States District Court, S.D. New York.

Sept. 30, 2004.

---

Edward Tocker, Valhalla, NY, pro se.

Michael J. DiMattia, McGuire Woods LLP, New York, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER

ROBINSON, District Judge.

Edward Tocker (the "Plaintiff") filed this action against Philip Morris Companies Inc. a/k/a Altria Group, Inc., Kraft Foods Inc., and General Foods Corp. (the "Defendants") to recover retirement benefits under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001–1461 (West 2003), specifically § 1132(a)(1)(B). The defendants have moved for summary judgment on two grounds: (1) the named defendants cannot properly be sued under ERISA; and (2) even to the extent the defendants named are proper, this court cannot find for the Plaintiff because the Pension Administrative Committee's prior decision to deny Tocker's claim cannot reasonably be construed as arbitrary and capricious. The plaintiff has moved to amend his complaint, specifically to add additional defendants. For the following reasons, defendants motion for summary judgment is GRANTED, and plaintiff's motion to amend is DENIED.

## I. Background

In 1967, the Plaintiff began working as a tax attorney and certified public accountant in the Corporate Tax Department of General Foods Corporation ("General Foods"). BAILEY DECL. EXH. A ¶ 9. As an employee of General Foods, the Plaintiff was eligible to participate in the General Foods Retirement Plan for United States Salaried Employees ("General Foods Plan"), a distinct legal entity from General Foods with assets held in a separate trust. PELL DECL. ¶ 4. In 1985, Philip Morris Companies Inc. ("Philip Morris") purchased General Foods, but did not purchase the General Foods Plan and did not assume any control over the assets of the General Foods Pension Trust. PELL DECL. ¶ 26. In 1988, Philip Morris purchased Kraft, Inc., which sponsored the Kraft Retirement Plan (the "Kraft Plan"), which was a separate legal entity from Kraft, Inc. and, therefore, from Philip Morris. PELL DECL. ¶ 11, 5. When, in 1989, General Foods merged into Kraft, Inc. to become Kraft General Foods ("KGF"), the General Foods Plan merged into the Kraft Retirement Plan to form the Kraft Foods North America, Inc. Retirement Plan. PELL DECL. ¶ 13.

In 1989, Tocker informed members of KGF Management and Benefits Administration, including Edward Bloom, one of his supervisors in the tax department, and Robert D. Varone, the Benefits Administration Manager, that he was suffering from a malignant brain tumor and had only six to eighteen months to live. BAILEY DECL. EXH. A ¶ 9. Tocker and Varone had several discussions regarding possible benefit options for Tocker, the specifics of which are now disputed by the parties. In letters dated February 27, 1990 and March 14, 1990, KGF described, and Tocker subsequently accepted, what the defendants have themselves described as a "special severance package" that granted benefits from two otherwise mutually exclusive programs. *See* DEFENDANTS' MEMO at 6.

As part of this special[1] package, Tocker was given (1) a lump-sum payment of $212,666.74 as part of the General Foods Corporation Workforce Reduction Program ("Workforce Reduction Program"), which provided eligible employees with a severance payment comprised of one month's pay for each year of service up to a maximum of 24 months (in this case, Tocker was given 22 months of base pay) and payment for any unused vacation time; (2) long-term disability payments beginning on March 3, 1990. *See* BAILEY DECL. EXHS. G, H. At the same time, Tocker was granted a monthly retirement pension fund payment beginning on January 1, 1992, the day after his 55th birthday. *See* BAILEY DECL. EXH. H. However, because the terms of Tocker's disability plan required that his monthly disability payments be offset by any funds he received under his pension plan, and because his monthly disability payments at the time

were higher than his pension benefits, Tocker later changed his mind about receiving pension payments beginning in 1992 and elected to forego pension benefits until he reached the age of 65, when his disability payments would end. BAILEY DECL. EXH. A ¶ 12. In January 2002, Tocker applied for pension benefit and was notified that his pension would be based on service from September 1967 to March 1990 only.

In January 2002, Tocker applied for pension benefits and was informed that he would receive a pension based on his years of service from September 11, 1967 until March 1, 1990. *See* BAILEY DECL. EXH. R. On July 27, 2002, Tocker requested a Review of his pension award by the Kraft Plan's Administrative Committee (the "Committee") and specifically argued that he should be credited with service for the period of March 1, 1990 until December 31, 2001, while he was receiving disability payments. By letter dated September 17, 2002, the Committee denied Tocker's appeal, agreeing that Tocker's pension should be calculated based on a termination date of March 1, 1990. *See* BAILEY DECL. EXH. U. After the Department of Labor refused to reverse the Committee's decision, Tocker filed suit in the Southern District of New York.

The crux of this matter is whether, in calculating Tocker's pension benefit in 2002, Tocker was entitled to credit for the period between March 1, 1990 and his 65th birthday on December 31, 2001. Generally speaking, employees had to terminate their employment in order to participate in the Workforce Reduction Program, VARONE DECL. ¶ 19, and the General Foods

---

**1.** In his Opposition brief, Tocker rejects the defendants' characterization of his severance arrangement as a "special package." PLAINTIFF'S OPP. MEMO at 5. Given that, by all accounts, the terms of the package contain many variations from his former employer's standard severance arrangements, characterizing his package as "special" seems appropriate.

Plan expressly provides that participating employees stop accruing service credit after their employment is terminated. BAILEY DECL. EXH. B ¶ 2.01(u). At the same time, in the ordinary course, only existing employees (i.e. employees who have not been terminated) were eligible for disability benefits. If Tocker was terminated in 1990, and somehow received disability payments as a non-employee, then he would not be entitled to credit for subsequent years. If he remained an employee after 1990, and somehow received payment under the Workforce Reduction Program without having his employment terminated, he would be entitled to credit for those years. In essence, the Defendants claim that Tocker was terminated under the Workforce Reduction Program, with a minor exception to standard rules and procedures made to allow for continued disability payments. Tocker claims that he was placed on Long–Term Disability, with a minor exception made to allow for the lump-sum payment.

## II. Analysis

### A. Defendants' Motion For Summary Judgment Should Be Granted Because A Jury Could Not Reasonably Find That The Committee's Decision Was Arbitrary And Capricious

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when "there is no genuine issue as to any material fact[.]" FED. R. CIV. P. 56(c). Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.*

In this case, the court's task is to review the prior judgment of the Committee and, in doing so, Second Circuit precedent clearly requires that the court apply a deferential standard of review. Where, as here, a benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, denials of benefits are subject to the more deferential arbitrary and capricious standard, and may be overturned only if the decision is without reason, unsupported by substantial evidence, or erroneous as a matter of law. *See Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441–42 (2d Cir.1995), *citing Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The General Foods Plan explicitly grants the Committee "all powers reasonably necessary to administer the [General Foods] Plan," and authorizes it to "determine eligibility,...compute and determine benefits, and...determine individual rights and privileges under the [General Foods] Plan." BAILEY DECL. EXH. B ¶ 13.08. Furthermore, the Plan states that "[t]he acts, decisions, determinations, and interpretations of the ... [Committee] pursuant to the provisions of the [General Foods] Plan ... shall be *conclusive*." (emphasis added). *Id.* at ¶ 13.14.

Although there are no "talismans by which a plan could trigger the highly deferential 'arbitrary and capricious' standard of review," *Pagan*, 52 F.3d at 442, the Second Circuit has found that language similar to that used in the General Foods Plan is adequate to invoke this more deferential standard. *See, e.g., Mario v. P & C Food Mkts.*, 313 F.3d 758, 763 (2d Cir.2002) (holding that language in the relevant agreement granting the pension administrator authority to "review all denied claims for benefits under the Plan" and resolve "questions as to the

proper interpretation of the Plan with respect to eligibility for benefits or otherwise" was sufficient to trigger the arbitrary and capricious standard of review); *Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1270 (2d Cir.1995) (holding that the arbitrary and capricious standard applies when the Plan states that "[t]he Retirement Committee shall pass upon all questions concerning the application or interpretation of the provisions of the Plan.").[2]

■ The Plaintiff argues that the arbitrary and capricious standard should not apply because Jill Youman, Chairperson and member of the Committee, was also an employee in Kraft's Human Resources Benefits Department, and therefore had a conflict of interest. This argument is not persuasive. First, "the simple fact that the administrator of a plan...happens to be 'an arm of the employer' does not in itself create a conflict of interest." *Jordan*, 46 F.3d at 1274.[3] And even if there was a conflict of interest in this case, the Supreme Court in *Bruch* made clear that the existence of an actual or potential conflict of interest does not change the standard of review. *See Bruch*, 489 U.S. at 115, 109 S.Ct. 948. *See also Pagan*, 52 F.3d at 442 ("[W]e review the NYNEX Committee's decision under the arbitrary and capricious standard, irrespective of whether the NYNEX Committee was operating under a possible or actual conflict

of interest."). Rather, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Bruch*, 489 U.S. at 115, 109 S.Ct. 948 (internal quotation omitted).

■ Under the arbitrary and capricious standard, the Committee's determination should be disturbed only if it was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pagan*, 52 F.3d at 442. As such, the scope of this court's review is "narrow" and this court is "not free to substitute [its] own judgment for that of the [Administrative] Committee." *Id.* Even if the plaintiff's interpretation of the General Food Plan were as reasonable as the Committee's, the arbitrary and capricious standard requires that this court defer to the interpretation of the Committee. *See Jordan*, 46 F.3d at 1273.

■ In light of the evidence offered by both parties, this court could not reasonably find that the Committee's decision was arbitrary and capricious and, therefore, summary judgment should be granted. Defendants point to various documents, signed and/or reviewed by the plaintiff in 1990, which state that the plaintiff's employment was being "terminated" as of March 1, 1990.[4] That Tocker's em-

---

**2.** *See also Pagan*, 52 F.3d at 441 (holding that the Pension Plan in question did grant complete discretion in part because it provided that the Committee "shall determine conclusively for all parties all questions arising in the administration of the [Pension] Plan....").

**3.** In *Jordan*, the court applied the arbitrary and capricious standard even though there was a two-person overlap in membership between the company's Fringe Benefits Com-

mittee and the Retirement Committee. *See* 46 F.3d at 1274.

**4.** In particular, Varone's March 14, 1990 letter, which summarized the final understanding between Tocker and his former employer states, several times, that Tocker's employment was being "terminated." *See* BAILEY DECL. EXH. H ("You will...be terminated with Workforce Reduction...3/1/90"). Furthermore, that same declaration indicated that all benefits other than long-term disability would "terminate" on 3/1/90, and that Tocker could

ployment was arguably terminated is significant, because the General Foods Plan provides that terminated employees are not "participating" employees, and only "participating" employees accrue retirement credits.[5] Defendants can, therefore, point to considerable evidence that Tocker agreed to an arrangement that included the termination of his employment and, therefore, the end of the period in which he was accruing years of credited service.

While the weight of the evidence clearly favors the Defendants, the Plaintiff is not without evidence supporting his position. Plaintiff has provided an affidavit from Edward Bloom, who was Tocker's superior at General Foods and who interceded on Tocker's behalf when Tocker was negotiating his benefit package in 1990. The affidavit states that "[n]o one had identified Ed as a candidate for Workforce Reduction, it was not the intention of his superiors to terminate him, and we were never notified that he was terminated." PLAINTIFF'S OPP. MEMO EXH. A.[6] Further, the fact that Plaintiff was receiving disability benefits supports his claim to have remained an employee because, as a general matter, only existing (i.e. not terminated) employees were eligible for such benefits. *See* DEFENDANTS' MEMO at 20. Finally, as Plaintiff points out, the issue of whether or

not he would continue to accrue years of credited service was never specifically addressed by the parties when the arrangement was outlined in 1990—no document stated that he would accrue years of credited service but no document stated that he would not.[7] In the Defendant's view, the many references to his "termination" implied that the Plaintiff would not accrue years of credited service after 1990. But since the parties altered standard rules and procedures in various ways in order to craft Tocker's special arrangement, it is not unreasonable to conclude that, just as the package permitted the plaintiff to receive disability benefits despite otherwise being terminated, it could also have allowed him to accrue years of credited service for as long as he was receiving long-term disability payments.

■ Nevertheless, the fact that there is some evidence to support the Plaintiff's version of events is inadequate to preclude summary judgment in this case. Although both Plaintiff and the Defendants arguably offer reasonably plausible interpretations of the facts, summary judgment is still proper given this court's limited scope for review of the Committee's decision. One could not reasonably find, given the evidence cited above, that the Administrative

---

continue dental and/or life insurance only at his own cost. *See id.* Furthermore, Tocker signed the 1989 General Foods Workforce Reduction Program Election of Separation Options Form stating, *inter alia*, that his "election of separation option is irrevocable," BAILEY DECL. EXH. K, and also filled out a Deferred MPAP payments form stating "[m]y effective separation date is 3/1/90." Defendants can, therefore, point to considerable evidence that Tocker, a tax attorney, was fully aware that his employment was being terminated in 1990.

**5.** Specifically, an employee remains a "Participating Employee" until his "Retirement Date or the date of termination of his employment,

whichever is earliest." BAILEY DECL. EXH. B. ¶ 2.01(i). A "Year of Credited Service" is defined as a year during which a "Participating Employee has completed 2,160 Hours of Service...." *Id.* at ¶ 2.01(u).

**6.** This evidence, however, is not particularly persuasive in light of the fact that, although Bloom advocated on Tocker's behalf, he did not appear to be nearly as involved in resolving the details of Tocker's arrangement as Varone, the Benefits Administration Manager.

**7.** In large measure, this appears largely the result of the fact that the parties did not expect at the time that the plaintiff would survive for as long as he has.

Committee's decision was arbitrary and capricious.[8] As such, summary judgment is proper in this case.[9]

## B. Plaintiff's Motion to Amend His Complaint Should Be Denied Because His Proposed Amendments Would Be Futile

■ The Plaintiff has filed a motion to amend his complaint by adding as defendants the Kraft Plan (as Successor to the General Foods Plan) and the Committee. Without adding these defendants, summary judgment would be proper in this case on the additional ground that the existing defendants—entities which, either indirectly or directly, employed him—cannot properly be sued under ERISA[10] *See Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir.1989) ("In a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable."); *Crocco v. Xerox Corp.*, 137 F.3d 105, 107–08 (2d Cir.1998) (dismissing claims against employer Xerox because Xerox was neither the designated Plan administrator nor a Plan trustee).

Nevertheless, this motion should be denied because, for the reasons described above, the plaintiff's amended complaint would still not survive summary judgment. *See Azurite Corp. v. Amster & Co.*, 844 F.Supp. 929, 939 (S.D.N.Y.1994) ("Although Rule 15 makes clear that leave to amend must be freely granted, it may be denied when the amendment would be futile.... [The plaintiff's] proposed amendment would be futile because the factual foundations of [the plaintiff's] new allegations are insufficient, as a matter of law, to withstand defendants' motion for summary judgment.") (internal citation omitted), *aff'd* 52 F.3d 15 (2d Cir.1995).

## III. Conclusion

For these reasons, Defendants' motion for summary judgment is GRANTED and Plaintiff's motion to amend his complaint is DENIED.

It is so ordered.

---

8. It is worth noting that, not only was the Committee's ultimate decision reasonable, the Committee also appears to have based its decision on a consideration of relevant documentary evidence as well as the terms of the General Foods Plan. In its letter to Tocker informing the plaintiff of its decision, the Committee stated that "the Committee was provided with a copy of [Tocker's] appeal letter and documentation" and that "[a]fter a thorough discussion, the Committee denied [Tocker's] appeal." BAILEY DECL. EXH. U. Further, the letter recounts facts and evidence supporting the Committee's decision. *See id.*

9. To the extent the Plaintiff, in an unclear portion of his complaint, is asserting common law causes of action related to his employee benefit plan, they should also dismissed. Section 514(a) of ERISA explicitly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a) (West 2003); *Smith v. Dunham–Bush*, 959 F.2d 6, 9, 9–10 (2d Cir.1992).

10. Plaintiff insists that the named defendants are proper because punitive damages cannot be assessed against the pension plan. This court is unaware of (and the plaintiff has not cited) any authority supporting his argument that employer corporations may be named in ERISA suits instead of, or even in addition to, the Plan or its Administrators for the purpose of recovering punitive damages.