*Greenway II, LLC v. Wildenstein & Co., Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of  April, two thousand twenty-three.

Present:

> ROSEMARY S. POOLER,
> WILLIAM J. NARDINI,
> SARAH A. L. MERRIAM,
> *Circuit Judges.*

_____

GREENWAY II, LLC, as successor to
NWW-1985 Trust,

> *Plaintiff-Appellant*,

> v. 22-1201

WILDENSTEIN & CO., INC.,

> *Defendant-Appellee.*

_____

| | |
|---|---|
| For Plaintiff-Appellant: | TED PORETZ, Zuckerman Gore Brandeis & Crossman LLP, New York, NY |
| For Defendant-Appellee: | STEVEN R. SCHINDLER (Jenny C. Gu, *on the brief*), Schindler Cohen & Hochman LLP, New York, NY |

Appeal from a judgment of the United States District Court for the Southern District of New York (Colleen McMahon, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Greenway II, LLC ("Greenway") appeals from a judgment of the United States District Court for the Southern District of New York (Colleen McMahon, *Judge*) entered on May 10, 2022, granting summary judgment to defendant Wildenstein & Co, Inc. ("Wildenstein"). Greenway alleges that Wildenstein, a reputable art dealership, defrauded Greenway and its predecessor, the NWW-1985 Trust (the "Trust"), when it sold an inauthentic Pierre Bonnard painting entitled *Still Life with Basket of Fruit* ("*Basket of Fruit*" or the "Painting") to the Trust in June 1985.

On June 28, 1985, Neil Wallace, as Trustee of the Trust, purchased the Painting from Wildenstein for $275,000. Before the sale of *Basket of Fruit*, Wallace engaged Kenworth Moffett—then-curator for contemporary art at the Museum of Fine Arts in Boston—as a consultant in his art acquisitions. Also before this sale, Wildenstein provided Wallace with a fact sheet (the "Fact Sheet"), which contained information about *Basket of Fruit*, as well as a second Bonnard work entitled *Plat de Pêches*. The Fact Sheet indicated that both paintings were Bonnard works. For each painting, it also contained a list of "references," which are catalogs in which that painting is or had been listed.

An important reference for Bonnard works is the Bonnard *catalogue raisonné*, which is generally regarded as the most authoritative source of information on whether a painting is a genuine work of Bonnard. The Bonnard *catalogue raisonné* was originally co-authored by Jean Dauberville and Henry Dauberville; a later revision added Guy-Patrice Dauberville ("Dauberville"), the son of Jean Dauberville, as a co-author. In the operative complaint, Greenway explains that "a work's absence" from a *catalogue raisonné* "is a bright red flag of inauthenticity,"

2

whereas "inclusion of a work" in an artist's *catalogue raisonné* "is compelling prima facie evidence of the work's authenticity." Joint App'x 14. The Fact Sheet's list of references for *Plat de Pêches* included the Bonnard *catalogue raisonné*, but the list of references for *Basket of Fruit* included only the 1965 Trosby Galleries auction catalog.

Beginning in April 2007 and through February 2017, Wallace obtained at least eight appraisals of *Basket of Fruit* from the auction house Christie's, Inc. ("Christie's"). Christie's valued the Painting at $3 million in April 2007 and $4 million in February 2017. Each appraisal generated a report (an "Appraisal Report"), which contained a description of the Painting, the appraisal value, and the following disclaimer about the Painting: "Not included in currently accepted catalogue raisonné; assumes that the recognized authority on the artist would confirm attribution." *See, e.g., id.* at 53. Wallace testified that he recalled seeing this disclaimer in the 2007 Appraisal Report at the time, but did not focus on it. Accordingly, he did not discuss with Christie's the significance of the work's absence from the "currently accepted catalogue raisonné." There is also no evidence in the record that he discussed the disclaimer in the 2007 Appraisal Report with anyone else.

In 2017, the Trust transferred the Painting, along with all rights, title, and interest in the artwork, to Greenway for estate planning purposes. In 2018, Wallace and his brother decided to auction a portion of their combined art collections through Christie's. In advance of the 2018 auction, Christie's submitted *Basket of Fruit* to Dauberville for authentication. Dauberville considered the Painting to be a forgery and responded by letter dated October 26, 2018, that it could not be listed in the Dauberville archives as an authentic Bonnard work. Therefore, Christie's withdrew the Painting from the auction. The Trust subsequently conveyed to Greenway all claims, rights and causes of action that the Trust had arising from or relating to the Painting.

On May 5, 2019, Greenway brought a single claim of fraud under New York law against Wildenstein. The district court granted summary judgment to Wildenstein on two alternative grounds: (1) Greenway's claims are barred by the applicable statute of limitations, and (2) Greenway cannot, as a matter of law, show reasonable reliance on Wildenstein's representations of the Painting's authenticity at the time of sale. On appeal, this Court reviews a grant of summary judgment *de novo*. *Mario v. P&C Food Mkts., Inc.*, 313 F.3d 758, 763 (2d Cir. 2002). We assume the parties' familiarity with the case.

"Under New York law, the time within which an action based upon fraud must be commenced is 'the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it.'" *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 154 (2d Cir. 2012) (quoting N.Y. C.P.L.R. 213(8)). Because the alleged fraud was completed in June 1985, when Wallace purchased the Painting, his claim would be timely only if it was brought within two years of the date the fraud was discovered or could have been discovered with reasonable diligence. To determine when the fraud was discovered for purposes of the statute of limitations, New York courts use the following test:

> Where the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him.

*Gutkin v. Siegal*, 85 A.D.3d 687, 688 (1st Dep't 2011) (cleaned up).

4

Applying this test to the present case, we hold that summary judgment was appropriate because the applicable statute of limitations bars Greenway's fraud claim.[1] Any reasonable trier of fact would be compelled to find that the disclaimer in the Appraisal Reports—which states that the Painting was not included in the Bonnard *catalogue raisonné* and that its authenticity was only "assume[d]"—would suggest to a person of ordinary intelligence the probability that he has been defrauded. Indeed, although Wallace states that he first became aware of the Painting's absence from the Bonnard *catalogue raisonné* when Christie's rejected it, he testified that he "should have been aware" of this fact "far earlier" based on the disclaimer in the Appraisal Reports, which he admits he saw. Joint App'x 194. The disclaimer in the 2007 Appraisal Report prompted a duty to conduct at least some investigation into Christie's notation that the work was absent from the Bonnard *catalogue raisonné*. Wallace made no inquiry over the course of the next two years, so knowledge of the fraud must be imputed to him as of April 2007. *Cf. Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 168–172 (2d Cir. 2005). Because Greenway's May 5, 2019, complaint was filed well after April 2009, its fraud claim is time-barred.

We are not persuaded by Greenway's argument that there is no evidence that Wallace should have been aware of information at odds with his expectation that the Painting was authentic. Greenway notes that the record does not establish that Wallace understood the significance of the Painting's absence from the "currently accepted" *catalogue raisonné* when he received the 2007 Appraisal Report. Further, Greenway emphasizes, the Appraisal Reports showed that, subject to the disclaimer, the Painting was continuing to increase in value; therefore, it claims, Wallace would have had no reason to doubt Wildenstein's representations. First, even if Wallace did not

---

[1] Since we hold that summary judgment was proper because Greenway's claim was time-barred, we need not reach the district court's alternate holding that Wildenstein was entitled to summary judgment because Greenway could not establish reasonable reliance as a matter of law.

5

understand the significance of the Painting's absence from the Bonnard *catalogue raisonné*, the Appraisal Reports' express disclaimer that authenticity was only assumed and would need to be confirmed by a "recognized authority" clearly signaled that the Painting's authenticity was open to question. This alone was sufficient to trigger a duty of inquiry into the Painting's authenticity. Second, a person of ordinary intelligence would not have focused only on the Appraisal Reports' valuations of the Painting while disregarding the disclaimer on which these valuations were based. By failing to focus on the disclaimer and declining to undertake his duty to conduct further inquiry, Wallace "shut[] his eyes to the facts which call for investigation" when he received the April 2007 Appraisal Report. *Gutkin*, 85 A.D.3d at 688 (internal quotation marks omitted). Therefore, we impute knowledge of the Painting's inauthenticity to Plaintiff as of April 2007 and conclude that Greenway's May 5, 2019, fraud claim was time-barred.

*     *     *

We have considered all of Greenway's arguments and find them to be unpersuasive. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

6