23-7774
*Bechard v. Colvin*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of January, two thousand twenty-five.

PRESENT:
>	RICHARD J. SULLIVAN,
>	STEVEN J. MENASHI,
>	MARIA ARAÚJO KAHN,
>	*Circuit Judges.*

_____

APRIL BECHARD,

>	*Plaintiff-Appellant,*

>	v.	No. 23-7774

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

>	*Defendant-Appellee.*[*]

_____

[*] The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

| | |
|---|---|
| **For Plaintiff-Appellant:** | ARTHUR P. ANDERSON, Anderson Lamb & Associates PC, Burlington, VT. |
| **For Defendant-Appellee:** | SHANNON FISHEL, Special Assistant United States Attorney (Charles Kawas, Acting Associate General Counsel – Division 2, Office of the General Counsel, Social Security Administration, Baltimore, MD, *on the brief*), *for* Carla B. Freedman, United States Attorney for the Northern District of New York, Syracuse, NY. |

Appeal from a judgment of the United States District Court for the Northern District of New York (Gary L. Sharpe, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the September 13, 2023 judgment of the district court is **AFFIRMED**.

April Bechard appeals from a judgment affirming the denial of her application for Social Security disability benefits. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

## I. Standard of Review

"When deciding an appeal from a denial of disability benefits, we focus on the administrative ruling rather than the district court's opinion." *Kohler v.*

*Astrue*, 546 F.3d 260, 264–65 (2d Cir. 2008) (internal quotation marks omitted). We do so "[b]ecause the [d]istrict [c]ourt's determination was governed by the substantial evidence standard, and because we must apply the same standard of review." *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). We therefore "conduct a plenary review of the administrative record" to determine whether "the correct legal standards have been applied" and whether "there is substantial evidence, considering the record as a whole, to support the [Social Security] Commissioner's decision." *Kohler*, 546 F.3d at 265 (internal quotation marks omitted). Under the substantial evidence standard, we may reject the factual findings of the administrative law judge (the "ALJ") "only if a reasonable factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks omitted). In other words, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014); *see also Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence.").

To assert a claim for disability benefits, the claimant bears the burden of proving that she is disabled, *see Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987), meaning that she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months," 42 U.S.C. § 423(d)(1)(A). In evaluating disability-benefits applications, the Commissioner follows a five-step process and considers: first, whether the claimant is performing work that qualifies as substantial gainful activity; second, whether the claimant has a severe impairment that significantly limits her physical or mental ability to do basic work activities; third, whether the claimant has a medical impairment that meets or equals an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1 (if so, the claimant is disabled and the inquiry ends); fourth, if the impairment does not meet or equal a listed impairment, the claimant's residual functional capacity ("RFC") and whether she could do her past relevant work; and fifth, if the claimant could not perform her past relevant work, whether she can make an adjustment to other work (if not, she is disabled). *See* 20 C.F.R. § 404.1520(a)(4).

On appeal, Bechard challenges the ALJ's determinations at the third and fourth steps of this process.

## II. Medical Equivalency Determination

Bechard first argues that the ALJ erred in concluding that her medical condition did not equal a listed impairment – namely, Listing 1.04(A). A claimant can establish that she has a qualifying impairment by showing that her condition "satisfies all of the criteria" of a listed impairment and meets the duration requirement, *id.* § 404.1525(c)(3), or by showing that her impairment is "medically equivalent," meaning that "it is at least equal in severity and duration to the criteria of any listed impairment," *id.* § 404.1526(a). As the Supreme Court has explained, "[f]or a claimant to show that [her] impairment matches a listing, it must meet *all* of the specified medical criteria[;] [a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Likewise, "[f]or a claimant to qualify for benefits by showing that [her] unlisted impairment . . . is 'equivalent' to a listed impairment, [s]he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id.* at 531. The listed impairments are "consider[ed] to be severe enough to prevent an individual

from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). Indeed, "[m]ost of the listed impairments are permanent or expected to result in death." *Id.* § 404.1525(c)(4).

The ALJ determined that Bechard's impairments, while severe, did not meet or equal Listing 1.04(A), which requires a disorder of the spine "resulting in a compromise of the nerve root . . . or the spinal cord," together with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)."[1] 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04 (2017). On appeal, Bechard contends that the ALJ improperly rejected the opinion of the ALJ's designated medical expert, Dr. Bernard Gussoff, that Bechard's condition equaled the requirements of Listing 1.04(A). But while an ALJ must consider medical evidence, such as the opinion of a medical expert,

---

[1] A straight-leg raise is a test to assess whether the spinal nerve roots in the lower back are irritated. *See Bentley v. Kijakazi*, No. 22-2883, 2023 WL 3862562, at *2 n.5 (8th Cir. June 7, 2023). A positive result indicates that the patient is experiencing pain radiating down her leg, which may be caused by nerve-root irritation, while a negative result indicates the absence of such pain.

"the final responsibility for deciding" whether a claimant's impairment meets or equals the requirements of a listed impairment "is reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(2); *see also* SSR 17-2p, 2017 WL 3928306, at *3–4 (Mar. 27, 2017) ("When an adjudicator at the hearings level obtains [medical expert] testimony or written responses to interrogatories about whether an individual's impairment(s) medically equals a listing, the adjudicator cannot rely on an [expert's] conclusory statement that an individual's impairment(s) medically equals a listed impairment(s).").

The ALJ here considered Dr. Gussoff's opinion in light of the entire medical record and determined that the evidence as a whole did not support a finding of medical equivalence. *See* SSR 17-2p, 2017 WL 3928306, at *3 (outlining the process for ALJs to follow in weighing a medical expert's opinion).[2] Having now reviewed the record, we cannot say that a reasonable

---

[2] Bechard argues that an ALJ must provide "overwhelmingly compelling" evidence to overcome a medical opinion and cites our decision in *Wagner v. Secretary of Health and Human Services*, 906 F.2d 856, 862 (2d Cir. 1990). However, our subsequent caselaw makes clear that the discussion in *Wagner* was confined to the medical opinions of a *treating* physician, not a medical expert designated by an ALJ. *See Rivera*, 923 F.2d at 968 & n.5; *Rosa v. Callahan*, 168 F.3d 72, 78–79 (2d Cir. 1999). Dr. Gussoff never treated Bechard; he only examined her records in connection with her disability claim. *See* 20 C.F.R. § 404.1527(a)(2) ("We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability."). We note that the *Wagner* standard does not apply even to a treating physician for claims filed after March 27, 2017, because the Social

factfinder "would *have to conclude otherwise*." *Brault*, 683 F.3d at 448 (internal quotation marks omitted). To the contrary, substantial evidence supports the ALJ's conclusion that Bechard did not show symptoms medically equivalent to Listing 1.04(A).

Dr. Gussoff identified four exhibits in the administrative record as providing the basis for his opinion on medical equivalence. But the ALJ reasonably concluded that none of these exhibits, either individually or in the aggregate, support such a conclusion. *First*, the MRI report from 2004 predated Bechard's first lumbar spine surgery by one year, her second surgery by five years, and the period of impairment at issue in this case by six years. In fact, a more recent MRI noted postsurgical improvements in her spinal condition. *Second*, the objective clinical findings in the 2011 examination report from a consulting physician showed that Bechard's "musculoskeletal and neurological examinations were entirely within normal limits," thereby undercutting Dr. Gussoff's conclusions. Sp. App'x at 56. *Third*, the 2013 examination reports

---

Security Administration repealed the rule giving special weight to the opinion of a treating physician. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5852–57 (Jan. 18, 2017). The current regulation provides that, going forward, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a).

from a pain-management specialist showed a negative straight-leg raise test and noted that Bechard was only experiencing "mild numbness and slight tingling that is intermittent" and "not an issue for her at th[at] time." Certified Admin. Rec. at 764. The ALJ therefore reasonably concluded that "this exhibit d[id] not support a conclusion that the claimant has the type of neurological deficits generally contemplated by [L]isting 1.04." Sp. App'x at 57. *Fourth*, the 2010 treatment notes from a different pain-management specialist indicated that Bechard had "minimal tenderness" and "good power and tone of all [four] extremities" despite a positive straight-leg raise test on one side. Certified Admin. Rec. at 874. And while Bechard argues that the ALJ had a duty to contact Dr. Gussoff to clarify the basis for his opinion, we have previously explained that there is no such duty when there is "a deficiency in [his] reasoning," as opposed to "a gap in treatment records." *Schillo v. Kijakazi*, 31 F.4th 64, 76 (2d Cir. 2022). The ALJ was therefore not required to contact Dr. Gussoff regarding his unsupported medical equivalency finding when the ALJ otherwise had "a complete record . . . consisting of medical opinions, treatment notes, and test results" from the relevant time period. *Id.* For all these reasons,

we conclude that substantial evidence supported the ALJ's decision to discount Dr. Gussoff's opinion.

Bechard further argues that "[t]he record contains considerable medical evidence to support the . . . requirements of Listing 1.04A." Bechard Br. at 34. But the ALJ reasonably concluded otherwise. The ALJ properly noted that "[t]he claimant has no history of chronic gait abnormality, weakness or atrophy of the lower extremities, or other clinical signs or findings relevant to [L]isting 1.04, other than documented positive straight[-]leg raises . . . , but without articulation of symptoms that would be consistent with [impairment] of a lumbar nerve." Sp. App'x at 57. Indeed, examination reports in the administrative record generally showed that Bechard had full strength in her lower extremities, no sensory abnormalities, and a normal gait. And while Bechard emphasizes her subjective reports of pain and other symptoms, the Social Security Administration's regulations are clear that such subjective reports "will not alone establish that [she is] disabled," as "[t]here must be objective medical evidence from an acceptable medical source that . . . would lead to a conclusion [she is] disabled." 20 C.F.R. § 404.1529(a); *see Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("[An ALJ] is not required to accept the claimant's

10

subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record.").

In short, based on this record, we cannot say that a "reasonable factfinder would *have to*" reach a conclusion contrary to that reached by the ALJ here. *Brault*, 683 F.3d at 448. Although Bechard asks us to reweigh the evidence, the law is clear that "[i]t is for the [Commissioner], and not this court, to weigh [any] conflicting evidence in the record." *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998). We therefore conclude that substantial evidence supported the ALJ's conclusion that Bechard's medical impairment did not meet or equal the criteria of Listing 1.04(A).

## III.   Residual Functional Capacity Determination

Bechard also argues that the ALJ's RFC determination was not supported by substantial evidence. But the magistrate judge rejected these arguments in his report recommending affirmance of the Commissioner's decision, and Bechard raised only a generalized, conclusory objection to the RFC portion of the magistrate judge's report, which does not suffice to preserve this issue for appellate review. *See* Fed. R. Civ. P. 72(b)(2) ("Within 14 days after being served

11

with a copy of the recommended disposition, a party may serve and file *specific written objections to the proposed findings and recommendations [of a magistrate judge].*" (emphasis added)).  We have previously explained that "a party's failure to object to any purported error or omission in a magistrate judge's report [forfeits] further judicial review of the point."[3]  *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003).

Even though Bechard stated in conclusory fashion that she "object[ed] to the Magistrate Judge's finding . . . regarding" her RFC, Dist. Ct. Doc. No. 24 at 1, she did not explain specifically how the magistrate judge erred, did not point to any contrary legal authority, and did not offer any further argumentation on this point.  *See Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) (holding that a party's conclusory objection to a magistrate judge's denial of a motion was a "bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority" and thus "not sufficient to preserve" the issue for appeal); *Colvin v.*

---

[3] We use the term "forfeiture" rather than "waiver" to describe a party's failure to raise an argument.  *See Doe v. Trump Corp.*, 6 F.4th 400, 409 n.6 (2d Cir. 2021) (explaining that the term "forfeiture is more appropriate" to use "[w]here a litigant's action or inaction is deemed to incur the consequence of loss of a right[ ] or . . . a defense" (internal quotation marks omitted)); *see also id.* ("The term waiver[ ] is best reserved for a litigant's intentional relinquishment of a known right." (internal quotation marks omitted)).

*Berryhill*, 734 F. App'x 756, 758–59 (2d Cir. 2018) (finding that an applicant for Social Security disability benefits forfeited review of an RFC determination when he merely "raised a general objection to the magistrate's report"). Indeed, the remainder of Bechard's objections focused exclusively on the medical equivalency determination. For all these reasons, we conclude that Bechard forfeited her challenge to the RFC determination here.[4]

*     *     *

We have considered Bechard's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[4] While the forfeiture rule is "non-jurisdictional and may be excused in the interests of justice," *Colvin*, 734 F. App'x at 758 (internal quotation marks omitted), there is no cause for excusing the forfeiture here. The magistrate judge thoroughly addressed the arguments Bechard now raises on appeal and determined that substantial evidence supported the ALJ's RFC finding. *See April B. v. Kijakazi*, No. 22-cv-743 (GLS) (DEP), 2023 WL 5959739, at *8–15 (N.D.N.Y. June 8, 2023). We identify no error in the magistrate judge's assessment of the ALJ's RFC finding that would justify revisiting it in the interests of justice.