Dated: February 29, 2012.

Milton H. POPICK, Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY, Defendant.

No. 1:09–CV–0386 (GTS/VEB).

United States District Court, N.D. New York.

Signed March 28, 2012.

Milton H. Popick, Kingston, NY, pro se.

Soc. Sec. Admin. Office of General Counsel–Region II, Sheena V. Williams–Barr, Esq., Special Assistant U.S. Attorney, of Counsel, New York, NY, for Defendant.

## MEMORANDUM–DECISION and ORDER

GLENN T. SUDDABY, District Judge.

Currently before the Court, in this action seeking Supplemental Security Income ("SSI"), filed by Milton H. Popick ("Plaintiff") against the Commissioner of Social Security Commissioner ("Defendant") under 42 U.S.C. § 405(g) and 1383(c)(3), are the following: (1) Defendant's motion for judgment on the pleadings (Dkt. No. 18); (2) Plaintiff's motion for judgment on the pleadings (Dkt. No. 21); and (3) the Report–Recommendation of United States Magistrate Judge Victor E. Bianchini (Dkt. No. 24), issued pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 72.3(c) of the Local Rules of Practice for this Court, recommending that the decision of Defendant be reversed and the matter be remanded to Defendant for further proceedings consistent with the Report and Recommendation and sentence four of 42 U.S.C. § 405(g). Neither party has filed Objections, and the time in which to do so has expired. For the reasons set forth below, the Report–Recommendation is accepted and adopted.

## I. RELEVANT BACKGROUND

### A. Procedural History

Because the parties have demonstrated in their briefs an adequate understanding

of this action's procedural history, and neither party has specifically objected to Magistrate Judge Bianchini's accurate recitation of that procedural history, the Court adopts that recitation, in this Decision and Order, which is intended primarily for the review of the parties. (*See generally* Dkt. No. 24, at 2 [Report–Rec].)

The Court would add only two points. First, Plaintiff's underlying application for SSI benefits was based on his having an alleged mental disability that began on January 1, 1992. (*See* Administrative Transcript ["T."] at 67–69.)[1] Second, in his decision of November 19, 2008, denying Plaintiff's application for benefits, the ALJ determined that was not disabled as defined under the Social Security Act, because there was no evidence in the record to substantiate the existence of a "medically determinable mental impairment" pursuant to 20 C.F.R. § 404.1520. (T. at 8–12.)

### B. Briefing by Parties

Generally, in his brief in opposition to Plaintiff's Complaint, Defendant asserts the following two arguments: (1) substantial evidence supports Defendant's Decision that Plaintiff was not disabled at step two of the five-step protocol for evaluating claims of disability under the Social Security Act; and (2) the ALJ correctly determined that Plaintiff's allegations were neither entirely consistent or credible. (Dkt. No. 18, at Part C.)

Generally, liberally construed, Plaintiff's brief in support of his Complaint argues, *inter alia*, that Defendant has improperly reviewed Plaintiff's employment history, and may have intentionally altered Plain-

tiff's employment records. (*See generally* Dkt. No. 21.)

### C. Magistrate Judge Bianchini's Report–Recommendation

In his Report–Recommendation, Magistrate Judge Bianchini recommends that (1) Plaintiff's motion for judgment on the pleadings be granted, (2) Defendant's motion for judgment on the pleadings be denied, (3) the decision of the Commissioner be reversed, (4) the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Report and Recommendation, and (5) the District Court consider the appointment of pro bono counsel to represent Plaintiff in the proceedings on remand. (Dkt. No. 24, at 13–14.)

Essentially, Magistrate Judge Bianchini recommends that Plaintiff's case be remanded to Defendant for further review based on the ALJ's failure to employ the "special technique" used to assess the severity of mental impairments (during the second and third steps of the five-step disability protocol) pursuant to 20 C.F.R. § 404.1520a. (Dkt. No. 24, at 8–13 & n. 6.) More specifically, Magistrate Judge Bianchini found as follows: (1) ALJ incorrectly determined that the state agency's consultative examiner had merely "suggested" personality disorder when in fact the consultative examiner had *actually diagnosed* Plaintiff's personality disorder; (2) the ALJ's dismissal of consultative psychiatrist Dr. Gindes' diagnosis on the ground that it was based on Plaintiff's self-reports was incorrect because (a) such self-reports are an essential diagnostic tool, and (b) Dr. Gindes' diagnosis was likely based upon

---

**1.** More specifically, Plaintiff allegedly suffers from diagnosed personality disorder, not otherwise specified, with schizoid features, and has some limitations arising from this condition such as moderate difficulties with maintaining social function and in maintaining concentration, persistence, or pace. (T. at 130, 141–44.)

observed abnormalities in Plaintiff's behavior, not merely Plaintiff's self-reports; and (3) the ALJ relied on Plaintiff's self-reports to support his decision denying Plaintiff SSI benefits yet failed to account for Plaintiff's other fantastical claims.[2] (*Id.*)

## II. APPLICABLE LEGAL STANDARDS

### A. Standard of Review of Magistrate Judge Bianchini's Report–Recommendation

When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed.R.Civ.P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c).[3] When performing such a *de novo* review, "[t]he judge may ... receive further evidence...." 28 U.S.C. § 636(b)(1). However, a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance.[4]

When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R.Civ.P. 72(b)(2),(3); Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition.[5] Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those argu-

---

2. Plaintiff believes his prior federal court case was the result of a White House cover-up and believes the SSA is also ignoring or altering record evidence in the instant action. (*See, e.g.,* Dkt. No. 21 [Plf.'s Brief].)

3. *See also Mario v. P & C Food Markets, Inc.,* 313 F.3d 758, 766 (2d Cir.2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

4. *See Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137–38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40, n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U.S. v. Raddatz,* 447 U.S. 667, 676, n. 3, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

5. *See also Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at *2–3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion,* 175 F.3d 1007 (2d Cir.1999).

ments to only a *clear error* review.[6] Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*[7]

After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

### B. Standard Governing Judicial Review of Defendant's Decision

In Part III.A. of his Report–Recommendation, Magistrate Judge Bianchini correctly recited the legal standard governing judicial review of Defendant's decision, and the five-step process for evaluating claims of disability under the Social Security Act. (Dkt. No. 24, at 3–5.) As a result, those standards are incorporated by reference in this Decision and Order, which (again) is intended primarily for the review of the parties.

### III. ANALYSIS

After carefully reviewing all of the papers in this action, including Magistrate

Judge Bianchini's Report–Recommendation, the Court concludes that Magistrate Judge Bianchini's thorough Report–Recommendation is correct in all respects. Magistrate Judge Bianchini employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Court accepts and adopts the Report–Recommendation in its entirety for the reasons stated therein.

The Court would add only that it has carefully considered whether to appoint *pro bono* counsel to represent Plaintiff in the administrative proceedings on remand. However, because Plaintiff has not requested such counsel, or demonstrated an inability to otherwise obtain counsel, the Court declines to make such an appointment.

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Bianchini's Report–Recommendation (Dkt. No. 24) is *ACCEPTED* and *ADOPTED;* and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 18) is *DENIED;* and it is further

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 21) is *GRANTED;* and it is further

---

6. *See Mario,* 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed.R.Civ.P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly–Rate Emp. Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady,* 09–CV–0924, 2010 WL 3761902, at *1, n. 1 (N.D.N.Y. Sept. 20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue,* 07–CV–

1077, 2010 WL 2985968, at *3 & n. 3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole,* 04–CV–0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan. 18, 2006) (Sharpe, J.).

7. *See also Batista v. Walker,* 94–CV–2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

**ORDERED** that this action is *RE-MANDED* to Defendant for further proceedings in accordance with this Decision and Order and pursuant to 42 U.S.C. § 405(g).

**REPORT AND RECOMMENDATION**

VICTOR E. BIANCHINI, United States Magistrate Judge.

## I. INTRODUCTION

In January of 2008, Plaintiff Milton Popick filed an application for Supplemental Security Income ("SSI") under the Social Security Act. Plaintiff alleged that he had been unable to work since January of 1992 due to mental illness. The Commissioner of Social Security denied Plaintiff's application.

Plaintiff commenced this action *pro se* on April 3, 2009, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

The Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 22).

## II. BACKGROUND

The relevant procedural history may be summarized as follows: Plaintiff applied for SSI benefits on January 16, 2008, alleging disability beginning on January 1, 1992. (T at 67–69).[1] The application was denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held in Albany, New York on August 13, 2008, before ALJ Robert Wright. (T at 13). Plaintiff, represented by counsel, appeared and testified.[2] (T at 16–27). On November 19, 2008, ALJ Wright issued a written decision denying Plaintiff's application for benefits. (T at 8–12). The ALJ's decision became the Commissioner's final decision on February 12, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 1–4).

Plaintiff, acting *pro se,* timely commenced this action on April 3, 2009. (Docket No. 1). The Commissioner interposed an Answer on July 10, 2009. (Docket No. 12). The Commissioner filed a Brief on December 23, 2009. (Docket No. 18). Plaintiff filed a Brief on February 1, 2010. (Docket No. 21).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and that this case be remanded for further administrative proceedings.

## III. DISCUSSION

### A. Legal Standard

■ A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v.*

---

1. Citations to "T" refer to the Administrative Transcript. (Docket No. 7).

2. Mitchell Spinac, Esq. represented Plaintiff in connection with the administrative proceedings. (T at 8). As indicated above, Plaintiff brings this action *pro se.*

3. General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

*Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *see Grey v. Heckler,* 721 F.2d 41, 46 (2d Cir.1983); *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979).

■ "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker,* 685 F.2d 60, 62 (2d Cir.1982).

■ If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan,* 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.,* 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. *See* 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in *Bowen v. Yuckert,* 482 U.S. 137, 140–142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[4]

■ While the claimant has the burden of proof as to the first four steps, the

---

4. This five-step process is detailed as follows: First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
 If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.
 If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.
 If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience;
 the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
 Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.
 Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.
 *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982) (per curiam); *see also Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

Commissioner has the burden of proof on the fifth and final step. *See Bowen,* 482 U.S. at 146 n. 5, 107 S.Ct. 2287; *Ferraris v. Heckler,* 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B. Analysis**

**1. Commissioner's Decision**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since January 16, 2008, the application date. (T at 10). However, the ALJ concluded that there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment. (T at 10). As such, the ALJ ruled that the Plaintiff was not disabled as defined under the Social Security Act and was therefore not entitled to benefits. (T at 11).

As noted above, the ALJ's decision became the Commissioner's final decision on February 12, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 1–4).

**2. Plaintiff's Claims**

Plaintiff argues that the Commissioner's decision should be reversed. In his *pro se* submissions, Plaintiff suggests that the employment history set forth in his SSI application is incorrect and may have been

intentionally altered. He also denies claiming an inability to work based on mental illness. Plaintiff further alleges that he was issued a large check for SSI benefits pursuant to a court order granted by a federal court located in Washington, DC during the 1990s, and that the records of that proceeding have been suppressed. (Docket Nos. 1–3, 14, 20, 21).

**a. Allegations Concerning Prior Court Order**

This Court is mindful that a *pro se* litigant's pleadings and submissions must be construed liberally and interpreted "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006). Nevertheless, a claim for relief is subject to dismissal if the plaintiff cannot establish "the grounds" upon which his claim rests through factual allegations sufficient "to raise a right to relief above a speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). As noted above, while Plaintiff was represented by counsel during the administrative proceedings, he is acting *pro se* in this action.

During the hearing before the ALJ, Plaintiff's attorney (who was not identified on the transcript)[5], indicated that Plaintiff based his claim for benefits upon a "Federal Court Order," which had apparently been sealed "by the White House...." (T at 15). Plaintiff testified that "Social services" directed him to apply for Social Security benefits during the early 1990s, which Plaintiff did even though he "always claimed" he was not qualified to receive such benefits. Plaintiff stated that he received a check for benefits from Social Security even though he was "not qualified." (T at 22). Plaintiff thereafter

**5.** The ALJ's decision identified Mitchell Spi- nac, as Plaintiff's attorney. (T at 8).

worked on a congressional campaign and was subject to a background check by the FBI. Plaintiff testified that the background check led to federal litigation in a court based in Washington, DC. According to Plaintiff, he prevailed in the litigation, with an unidentified federal judge saying that Plaintiff "won the case" and would receive "a big check, add another zero." (T at 22). Plaintiff avers that the Social Security Administration was ordered to give him the money, but he never received it. (T at 22).

Plaintiff then testified that in or about 2007, his local pastor contacted law enforcement authorities in Washington, DC, who allegedly advised that they found the court order awarding money to Plaintiff and relayed the contents of that order over the telephone, but never provided Plaintiff with a copy. (T at 23). Plaintiff further indicated that while the order was "public," the remainder of the court record had been sealed because "the White House was involved." (T at 23–24).

The ALJ found Plaintiff's allegations incredible, noting that Plaintiff "was unable to produce any evidence of [the] alleged prior ruling." (T at 11). Counsel for the Commissioner performed a search using the electronic docket system run by the Administrative Office of the United States Courts (commonly known by the acronym "PACER"), but was unable to locate any record of a case involving Plaintiff. This Court likewise conducted a search and did not find any indication of federal litigation involving Plaintiff, other than the instant case. This Court also conducted a search of published federal cases using the database furnished by WESTLAW, which did not yield any evidence of another case involving Plaintiff.

█ Of course, if the case was actually sealed, as alleged by Plaintiff, one would not expect it to appear on public databas-

es. However, Plaintiff provided no evidence whatever to substantiate any portion of his rather incredible claims. Indeed, even if the court records had been sealed by White House officials or court personnel, one would expect that Plaintiff could provide some further explanation or evidence concerning why a federal court would order the Social Security Administration to pay damages or benefits. Likewise, there is no evidence to substantiate Plaintiff's claim that the employment history contained in the administrative record was tampered with. Accordingly, this Court finds no reversible error in the ALJ's decision to discount the credibility of Plaintiff's allegations in this regard.

### b. Evidence Concerning Mental Impairment

█ In an initial interview completed in January of 2008 in connection with Plaintiff's application for SSI benefits, Plaintiff claimed that he suffered from mental illness and had "difficulty working with others." (T at 85). The interviewer noted that Plaintiff seemed "well" through much of the interview and was able to answer most of the questions. (T at 83). However, the interviewer indicated that Plaintiff appeared "to have trouble separating reality from fantasy." (T at 83). In a written document submitted to the State Office of Disability Determination, Plaintiff repeatedly stated that he was not disabled. (T at 93–109).

There was an indication that Plaintiff received counseling from Ulster County Mental Health. (T at 88). Further investigation revealed that Plaintiff had been assessed by Ulster County, but the case was closed after Plaintiff "clearly stated that he did not have a mental illness and was invested in working." (T at 111). A social worker from Ulster County assessed Plaintiff, noted that he denied any mental

disability and claimed he could work. (T at 123). The social worker opined that Plaintiff "would need a much more comprehensive and detailed evaluation to assess possible mental illness." (T at 123). She found moderate limitations with regard to Plaintiff's mental functioning, but indicated "unknown" with regard to whether Plaintiff had any limitation as to work activities. (T at 124).

In March of 2008, Dr. Alex Gindes performed a consultative psychiatric evaluation. Dr. Gindes reported that Plaintiff denied any history of mental health treatment. (T at 128). Likewise, Plaintiff denied any symptoms of clinical depression, anxiety disorder, bipolar disorder, formal thought disorder, and cognitive disorder. (T at 128). Dr. Gindes found Plaintiff "cooperative, but also rather evasive," and noted that Plaintiff was "quite defensive" and seemed to have "below adequate" social skills. (T at 129). Plaintiff appeared to demonstrate "good" insight and judgment and reported an ability to engage in a broad array of activities of daily living. (T at 130).

Dr. Gindes opined that Plaintiff could follow and understand simple directions and instructions; perform simple tasks independently; maintain attention and concentration; maintain a regular schedule; learn new tasks; perform complex tasks independently; and make appropriate decisions. (T at 130). Dr. Gindes concluded that Plaintiff could appropriately deal with stress, but was not always able to adequately relate with others. (T at 130). He noted that Plaintiff's "difficulties may be caused by underlying character pathology." (T at 130).

In summary, Dr. Gindes diagnosed personality disorder, NOS, with schizoid features. However, he concluded that the results of his examination did not "appear to be consistent with any psychiatric or cognitive problems that would significantly interfere with [Plaintiff's] ability to function on a daily basis." (T at 130). Dr. Gindes recommended that Plaintiff seek employment and described Plaintiff's prognosis as "[g]ood, given an absence of clearly debilitating psychiatric symptoms." (T at 130).

Plaintiff's records were reviewed by a non-examining State Agency review consultant, who indicated a diagnosis of "Personality disorder NOS with schizoid features." (T at 141). The consultant found that the disorder imposed mild limitations on Plaintiff's activities of daily living, moderate difficulties with respect to maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. (T at 144). The consultant found no evidence of limitation with regard to understanding and memory; moderate limitation with respect to completing a normal workday and workweek, and moderate limitation in terms of social interaction. (T at 148–49). In sum, the consultant found that Plaintiff could understand and remember instructions; sustain attention and concentration for tasks; related adequately with others, and adapt to change. (T at 150).

During the administrative hearing, Plaintiff testified that he engages in various social pursuits and activities of daily living, including active participation in his church. (T at 20–21).

As noted above, the ALJ found that there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment and thus rejected Plaintiff's claim for benefits without proceeding any further with the sequential evaluation process. (T at 10–11). Thus, the ALJ did not employ the "special technique" used to assess the severity of mental impairments.[6]

The consultative examiner and non-examining review consultant diagnosed personality disorder, NOS, with schizoid features, and identified at least some limitations arising from that condition. (T at 130, 141). The ALJ afforded "great weight" to the consultants' findings and found them "well-supported by the evidentiary record as a whole." (T at 11). However, the ALJ discounted Dr. Gindes's "suggestion of a personality disorder" because it appeared "to be based purely on [Plaintiff's] subjective history and [did] not constitute objective evidence of a medically determinable impairment." (T at 11).

This Court finds that the ALJ erred with regard to this aspect of his decision.

First, the consultative examiner did not "suggest" personality disorder, he diagnosed it. (T at 130).

Second, the Second Circuit has held that a patient's complaints or reports of his history are "an essential diagnostic tool." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir.2008) (quoting *Green–Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir.2003)) (referring to "a patient's report of com-plaints, or history, as an essential diagnostic tool."). As such, the ALJ should not have been so quick to dismiss Dr. Gindes's diagnosis because it may have been based on Plaintiff's self-reports.

Third, Dr. Gindes's diagnosis was quite likely based, in part, on his observation of Plaintiff during his examination and not "purely" on Plaintiff's subjective history, as the ALJ suggests. Indeed, given that Plaintiff frequently denied mental illness, it is possible that the consultant examiner diagnosed personality disorder based upon observed abnormalities of behavior, rather than any subjective statement by Plaintiff. *See* 20 C.F.R. 416.928(b) ("Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception.").

Fourth, the ALJ was quite ready to rely on Plaintiff's subjective statements when Plaintiff denied that he suffered from mental illness (T at 11), but then discounted Dr. Gindes's assessment because it may have been based upon Plaintiff's subjective statements. Lastly, the ALJ does not appear to have accounted for the fact that Plaintiff's rather fantastic claims concern-

---

6. When evaluating the severity of mental impairments, the regulations require the ALJ to apply a "special technique" at the second and third steps of the review, in addition to the customary sequential analysis. *Kohler v. Astrue*, 546 F.3d 260, 265–66 (2d Cir.2008) (citing 20 C.F.R. § 404.1520a).

The technique first requires a determination of whether the Plaintiff has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Then, the ALJ must rate the degree of Plaintiff's functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *See* 20 C.F.R. § 404.1520a(c)(3). These areas are rated on a scale of "none, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4); 416.920a(c)(4). A mental impairment is generally found not severe if the degree of limitation in the first three areas is mild or better and there are no episodes of decompensation. § 404.1520a(d)(1).

The ALJ must document "a specific finding as to the degree of limitation in each of the functional areas." 20 C.F.R. § 404.1520a(e)(2). If the mental impairment is found to be severe, at the third step of the review, the ALJ must consider whether the claimant's mental impairments meet or medically equal of the listed impairments. If the impairments do meet or medically equal one of the impairments set forth in the Listings, the claimant will be found to be disabled. If not, the ALJ is then required to assess the claimant's residual mental functional capacity. § 404.1520a(d)(3).

ing a White House cover-up and a prior court case might themselves be evidence of an impairment.

Accordingly, this Court finds that a remand is necessary for reconsideration of the evidence in light of the concerns outlined above. It should be noted that the Commissioner may well conclude that Plaintiff is not entitled to benefits because, for example, Plaintiff's medically determinable impairment does not rise to the level of a "severe" impairment under the Social Security Act or that Plaintiff does not otherwise satisfy the requirements of being disabled under the Act.

However, the question presented here is whether substantial evidence supports the ALJ's conclusion that there are no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment. Given (1) the consultative examiner's diagnosis, which was also noted by the State Agency review consultant; (2) the evidence suggesting difficulty distinguishing between fact and fiction; and (3) Plaintiff's *pro se* status, this Court finds that remand is warranted for reconsideration with regard to the issues identified above. Moreover, given Plaintiff's evident difficulties, it is suggested that the District Court consider the appointment of *pro bono* counsel to represent Plaintiff in the administrative proceedings on remand.

### 3. Remand

 "Sentence four of Section 405(g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir.2002) (quoting 42 U.S.C. § 405(g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would … plainly help to

assure the proper disposition of [a] claim." *Kirkland v. Astrue*, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008). Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

### IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiff's motion for judgment on the pleadings be granted, Defendant's motion for judgment on the pleadings be denied, the decision of the Commissioner be reversed, that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Report and Recommendation, and that the District Court consider the appointment of *pro bono* counsel to represent Plaintiff in the proceedings on remand.

### V. ORDERS

Pursuant to 28 USC § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTEN-**

SION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *F.D.I.C. v. Hillcrest Associates,* 66 F.3d 566 (2d Cir.1995); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir.1988); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not,* presented to the Magistrate Judge in the first instance. *See Paterson–Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

SO ORDERED.

March 5, 2012.