Joynes, J.
This is a motion by Thomas & Ammon against Baker, late sheriff of Grayson county, and his sureties, to recover the sum of $420, levied for them by the County court of said county on the 25th of *18 June 1861. At September term 1861, Baker was removed from office for his failure to give a new bond, had been required of him upon the petition of some of his sureties. Judgment was rendered for plaiatiffs, and various errors are assigned in the petition.
The first error assigned is, that there was no proper evidence before the Circuit court that any levy had been laid by the County court. - The ground of the objection is, that the only evidence that a levy had been made, was a book produced before the Circuit court as the original order book of the County court. It has not been contended that the order book of the County Court, if authenticated as such, was not competent evidence of its contents, to the same extent as a certified copy would have been; and such an objection, if made, could not have been sustained. The usual mode of proving the record of another court, is by the production of a certified copy. But the copy is not produced in such cases, because it is better evidence than the original. It is received only on the ground of convenience, as a substitute for the original record. The reception of a copy avoids the inconvenience of removing the original record from place to place; and as one court will not take judicial notice of the records of anothor, the certificate supplies the necessary authentication. But the original, if properly authenticated, is equally admissible, and is, in its nature, the highest evidence. Gray v. Davis, 27 Conn. R. 447.
The objection was, that it did not sufficiently appear that the book produced was the order book of the County court. To prove that fact, the plaintiffs examined one Thomas, who was asked if he was not the deputy clerk of the County court of Grayson. The question was objected to, and does not appear to have been answered by the witness. The court thereupon *19 ;asked the witness if there was not an order in the hook appointing him. deputy clerk, to which he replied in the affirmative, and if he had not qualified as puty clerk, to which he also replied in the affirmative. The witness then said, in reply to a further question from the court, that the hook produced was the order book of the County court. The court thereupon declared that it would receive the book without further proof, as the genuine order book of the County court, and as coming from the proper custody.
There was no error in this decision. The questions put to the witness by the court were not objected to. The answer showed that the"'witness had been appointed and qualified as deputy clerk, and the court might well have inferred that he also acted as deputy •clerk. In this view, the proof was as complete as if the clerk himself had produced the book and proved its authenticity. But even if the witness was. not deputy clerk, or was, not proved by any competent evidence to be such, he might still be able to identify the order book of the County court. He professed to identify it, and it was for the court to judge of the credit due to his testimony. The book was before the •court, and it could judge of its genuineness from inspection. In such a case it is, hardly possible that there could ever be a mistake, and' in this case there is not a particle of evidence to raise a suspicion that the book was not in fact what it was represented to be.
The next error assigned is, that the County court had no authority to lay the levy, the justices not having been summoned for the purpose.
The record does not show that the justices had not been summoned. It is silent on that subject. The real question, therefore, is, whether it is necessary, upon this motion, that the record should show affirmatively that the justices had been summoned.
The court which lays the county levy is not a special *20 tribunal created for that particular purpose. It is the ordinary County court. That court is a court of general jurisdiction. Harvey v. Tyler, 2 Wall, U. S. R. 328. Before the court can lawfully proceed to lay the levy, all the justices must have been summoned for the purpose, or a majority of the justices must be present. If all the justices have been summoned, the levy may be laid, provided a sufficient number be-present to form a court for ordinary purposes. When the court is about to lay the county levy, the first question to be determined is, whether the justices have all been summoned, or, if they have not been summoned, whether a majority of’them is present. And when the court proceeds to lay the levy, it in effect determines these questions, and decides that the justices have been summoned, or that a majority of them is present. The propriety of that decision cannot be called in question in any collateral proceeding.
In Cox & al. v. Thomas’ adm’x, 9 Gratt. 323, a motion was made in the Circuit court by the representative of' Thomas, late sheriff, to recover from Cox, his deputy, for his default in not paying over money received by him upon an execution issued from the County court. The plaintiff in the execution had obtained a judgment in the Circuit court against the representative of' Thomas, and in this motion Cox sought to impeach that judgment, on the ground that the Circuit court had no jurisdiction to render it, inasmuch as the statute only authorizes the motion of the execution creditor to be made in the court from which the execution issued.
But this court overruled the objection; Judge Allen delivering the opinion of the whole court, said: “ In the case of the Marshalsea, 10 Coke 76 a, it was resolved, that where a court has jurisdiction of a cause but proceeds erroneously, no action lies against the party who sues, or the officer who executes the precept *21 of the court. But if the court had no jurisdiction, the whole proceeding is coram non judice, and actions will lie against them without regard to the precept. If the court has cognizance o± the cause, advantage cannot he taken of an erroneous judgment collaterally. Bor though the error be apparent, the judgmeut remains in force until reversed. Drury case, 8 Coke 139; Tarlton v. Fisher, Dougl. R. 671. The only question, then, would seem to be, whether the subject matter was within the jurisdiction of the court; if it was, if the .jurisdiction of the court extended ‘ over that class of eases, it was the province of the court to determine for itself whether the particular case was one within its jurisdiction. The Circuit court is one of general jurisdiction, taking cognizance of all actions at law between individuals, with authority to pronounce judgments, and to issue executions for their enforcement. The jurisdiction of this court to take cognizance of all controversies between individuals in proceedings at law need not (as in the case of courts of restricted and limited jurisdiction), appear on' the face of the proceedings. When its jurisdiction is questioned, it must decide the question for itself. BTor is it bound to set forth on the record the facts on which its jurisdiction depends. Whenever the subject matter is a controversy at law between individuals, the jurisdiction is presumed from the fact that it has rendered the judgment. And the correctness of such judgment can be inquired into only in some appellate tribunal.” It was held, therefore, that the judgment rendered by the Circuit court in favor of the execution creditor, was an adjudication of the fact on which the jurisdiction of the court depended, the correctness of which could not be called in question in a collateral proceeding.
The case of Cox & al. v. Thomas’ adm’x, has been followed by Hutchison, sheriff, v. Priddy, 12 Gratt. 85; Andrews v. Avery, 14 Gratt. 229; and Gibson v. Beck- *22 ham, & als., 16 Gratt. 321. These cases, and others^ cited in them, have settled the law of this State in respect to the conclusiveness of records upon jurisdictional questions, a subject upon which there exists an irreconc^abic diversity in the decisions elsewhere. See notes to Crepps v. Durden, 1 Smith Lead. Cas. 378.
In conformity with the principle thus established, the order of the court in this case laying the county levy at Jnne term, was an adjudication that the facts, existed which were necessary to authorize that proceeding, and that adjudication cannot be called in question in this collateral proceeding. And it was accordingly so held by this court in Cook, sheriff, v. Hayes, 9 Gratt. 142.
It was conceded by counsel in this case, that Cook v. Hayes is an authority in point. We were urged to overrule it, however, on the ground, that the laying of the county levy is not a judicial proceeding, and that the jurisdiction of the County courts cannot be presumed in respect to any of their proceedings whicli are not strictly judicial. Ho authority has been cited for this proposition, and I shall not stop to consider it. For while in the .assessment of the tax the County court exercises power which does not come within the ordinary scope of judicial power, in the adjudication of the debts chargeable upon the county, on which rests the right of the creditor to proceed against the Sheriff and his securities, the court exercises a power which is purely judicial in its nature, though it is not exercised in the usual form of judicial proceedings. The action of the court in the exercise of such a power cannot be questioned in a collateral proceeding. Harvey v. Tyler, ubi supra.
The statute provides that every sum, payment whereof is directed out of the levy, shall be paid within six months from the date of the order, and that if any such sum is not so paid, judgment therefor may *23 be obtained against tbe sheriff and his sureties, on O ' motion. Code of 1860, ch. 53, § 17. The effect of the statute is, that the sheriff and his securities are •> ,. „ . „ . liable to the creditor, after the expiration ot the six months, whether the money has been collected from the taxpayers or not. Stuart v. Hamilton, 2 Hen. & Mun. 48. This liability was not affected, in the present case, by the removal of the sheriff from office before the expiration of the six months. The duty of collecting the levies had devolved upon the sheriff', and he had commenced the execution of it before his removal from office, and he was bound to complete it, notwithstanding his removal.
The statute, taken from the Code of 1849, provides, that when there is no person acting as sheriff, the coroner shall perform all the duties of sheriff, except such as relate to the collection of taxes, levies, &c. Code of 1860, ch. 49, § 20. The act of 1851 provides, that in any case of vacancy in the office of sheriff, from other causes than the death of the sheriff, the County court may appoint a collector of the taxes, levies, &c. Code of 1860, ch. 49, § 18. But this provision is permissive only, and not mandatory. "Where no such appointment is made, the duty of the sheriff to collect the taxes, levies, &c., remains, and the sureties remain liable for its due performance. Besides, one of the duties which devolved upon the sheriff was to pay to each person the sum levied for him, within six months from the date of the order. The present motion is founded on a breach of that duty. As soon as that duty was undertaken by the sheriff, the securities became liable for its due fulfillment by him. The sureties did not undertake merely that the sheriff should faithfully account for the money which he might collect from the levies, but also that he should, within six months, pay to each person the sum levied in his favor. In case of non-payment by the sheriff, *24 they were liable, as I have said before, though the sheriff had not collected a dollar. If the sureties are liable though the sheriff has collected nothing, they must be equally so when he has collected a part, though it was not collected until after his removal from office.
There is no force in the objection, so strenuously urged, that the sureties are thus made liable for acts and defaults of the sheriff committed after he ceased to be sheriff'. The sureties of the sheriff undertake that he shall perform the duties of the office of sheriff, and their liabilities are commensurate with his duties. Many of such duties are to be performed after the sheriff has ceased to hold the office. Thus, it is well settled at common law, that when a sheriff has levied a fieri facias while in office, he is authorized, and may be compelled, to complete the execution by a sale of the goods, after he is out of office. The sureties of the sheriff are as much liable for his acts and defaults in the execution of these duties, after he is out of office as while he is in it. The undertaking of the sureties is entire, that he shall faithfully perform his duties, and it is immaterial when the acts or defaults in respect to them took place. So a deputy sheriff has authority to act after the term of office of the sheriff is ended, in the completion of duties, the execution of which was commenced during the term, and the sureties of the sheriff are responsible for acts of the deputy thus done after the term of his principal has expired. Tyree v. Wilson, 9 Gratt. 59. So when a sheriff' goes out of office, his power and duty-to continue the collection of the taxes and levies remain, in like manner, and the statute preserves to him the same power of distress and sale as while he continued in office. Code of 1860, ch. 86, § 4.
hTor is there any force in the other objection insisted upon, that to hold the sureties liable for the payment *25 of the money due to tlie plaintiffs in this ease, is in conflict with the provisions and policy of chap. 146 of the Code, under which the sheriff was removed from office. That chapter provides, that when an officer who has been required to give a new bond, as therein prescribed, fails to do so, he shall be deemed to have been guilty of a breach of official duty, and shall be forthwith removed from office. But it is silent as to the effect of such removal upon the liability of the sureties. There is no difficulty, however, in fixing its meaning and effect. After his removal from office, the sheriff can undertake no new duty, and make the sureties responsible for its due performance. But when the duty was undertaken by the sheriff and the performance commenced, before his removal, he must go on to complete it, unless provision is made by law for transfen'ing it to other hands. In such a case, the liability of the securities for the performance of the duty has attached, and their liability, as in other cases, is commensurate with the duty of the sheriff.
These views dispose of the third, fourth and fifth assignments of error, which all proceed upon the assumption, that the defendants cannot be held liable in this case, unless it can be showm that money sufficient to satisfy the claim of the plaintiffs remained in the hands of the sheriff, arising from collections made before his removal from office.
The next error assigned is, that the plaintiffs are non-residents of the county, and that no demand of payment was made upon the sheriff before the motion was instituted. The provision of chapter 187, § 20 of the Code, which is relied upon to sustain the position that a previous demand was necessary, is confined to the case of money made under execution, and does not, therefore, apply to this case. The statute upon which this proceeding is founded provides, that every *26 sum, whereof payment is directed out of the levy, “shall he paid” by the sheriff to the person to whom "payment is so directed, within six months from the date of the order. This imposes an absolute duty on the shei’iff. And the statute further provides, tliat “if any such sum be not so paid,” judgment may be obtained, on motion, against the sheriff and his securities. The liability upon non-payment is direct and unconditional. ISTo previous demand is necessary in such a case. 3 Rob. Pract. (new) 601, 603.
I do not understand this court to have decided, in Cook v. Hayes, that a previous demand is necessary, before such a motion as this can be maintained. The court held, in that, ease, that if a demand was necessary, the objection for the want of it could not be made for the first time in this court, and moreover, that upon the evidence, in that case, it might be inferred that a demand had been made.
The only remaining assignment of error is, that if the plaintiffs were entitled to judgment at all, the court gave them judgment for too much. The sum levied for the plaintiffs was $420, which was payable on the 25th day of December 1861. ' To this sum the court added interest up to the date of the judgment (September 25, 1862), and ten per cent, damages on the amount of principal and interest. These amounted together (principal, interest and damages) to $482 79. The coui’t then gave judgment for the said sum of $482 79, with interest thereon from December 25, 1861, to the date of the judgment, with ten per cent damages on the aggregate, and interest on the whole from the date of the judgment till paid. This was an error, for which the judgment must be reversed, and a judgment rendered for the proper amount, namely: for $420, with interest thereon froin December 25, 1861, to September 25, 1862, with ten per cent, dam *27 ages on. the amount of such principal and interest, and interest on the whole from September 25,1862, till paid.
The other judges concurred in the opinion of JoYNES, J.
Judgment reversed.