**19-1093-cv**
*American Federation of Musicians v. Neshoma*

# In the

# United States Court of Appeals

## For the Second Circuit

————

AUGUST TERM, 2019

ARGUED: FEBRUARY 13, 2020
DECIDED: SEPTEMBER 3, 2020

No. 19-1093-cv

AMERICAN FEDERATION OF MUSICIANS AND EMPLOYERS'
PENSION FUND, BOARD OF TRUSTEES OF THE AMERICAN
FEDERATION OF MUSICIANS AND EMPLOYERS' PENSION
FUND,
*Plaintiffs-Appellees*,
V.
NESHOMA ORCHESTRA AND SINGERS, INC..
*Defendant-Third-Party Plaintiff-Appellant*,
V.
ASSOCIATED MUSICIANS OF GREATER NEW YORK LOCAL 802,
AFM, AFL-CIO,
*Third-Party Defendant-Appellee*.[1]

————

Appeal from the United States District Court
for the Southern District of New York.

————

---

[1] The Clerk of Court is directed to amend the caption as shown above.

Before: WINTER, WALKER, and CARNEY, *Circuit Judges*.

_____

This appeal presents the questions of (1) whether arbitration was properly initiated by defendant-appellant Neshoma Orchestra and Singers, Inc. (Neshoma) in response to a claim against it for $1.1 million in withdrawal liability by the American Federation of Musicians and Employers' Pension Fund (Fund) and (2) whether Neshoma's third-party claim against its union was preempted by the National Labor Relations Act (NLRA).

Neshoma contends that the district court erred in granting summary judgment against it. Neshoma maintains (1) that it had timely demanded arbitration pursuant to 29 U.S.C. § 1401(a)(1) and (2) that any failure to timely demand was excused because the arbitration rules of the American Arbitration Association (AAA) imposed preconditions to arbitration that were not fair or equitable. We conclude that the parties were bound by the Fund rules, which required Neshoma to initiate arbitration with the AAA by filing a formal request before the statutory deadline, and Neshoma failed to do so.

We also conclude that the district court did not err in dismissing Neshoma's third-party complaint against the Union on

the pleadings as preempted by the NLRA.  Accordingly, we affirm the district court's judgment.

————

Patricia McConnell (LEVY RATNER, P.C.), New York, NY, *for Plaintiffs-Appellees.*

RAAB, STURM & GANCHROW, LLP (Ira A. Sturm, *on the brief*), Fort Lee, NJ, *for Defendant-Third-Party Plaintiff-Appellant.*

LAW OFFICE OF HARVEY S. MARS, LLC (Harvey Steven Mars, *on the brief*), New York, NY, *for Third-Party Defendant-Appellee.*

————

PER CURIAM :

This appeal presents the questions of (1) whether arbitration was properly initiated by defendant-appellant Neshoma Orchestra and Singers, Inc. (Neshoma) in response to this suit to recover $1.1 million in withdrawal liability by the American Federation of Musicians and Employers' Pension Fund (Fund) and (2) whether Neshoma's third-party claim against its union was preempted by the National Labor Relations Act (NLRA).

Neshoma contends that the district court erred in granting summary judgment against it.  Neshoma maintains (1) that it had timely demanded arbitration pursuant to 29 U.S.C. § 1401(a)(1) and (2) that any failure to timely demand was excused because the

arbitration rules of the American Arbitration Association (AAA) imposed preconditions to arbitration that were not fair or equitable. We conclude that the parties were bound by the Fund rules, which required Neshoma to initiate arbitration with the AAA by filing a formal request before the statutory deadline, and Neshoma failed to do so.

We also conclude that the district court did not err in dismissing Neshoma's third-party complaint against the Union on the pleadings as preempted by the NLRA. Accordingly, we affirm the district court's judgment.

## BACKGROUND

The Fund is a multiemployer pension benefit plan under the Employee Retirement Income Security Act (ERISA). Neshoma, a band represented by Associated Musicians of Greater New York Local 802, AFM, AFL-CIO (Union), made pension contributions to the Fund on behalf of Neshoma's employees who were Union members. The parties negotiated a collective bargaining agreement (CBA) providing that "Neshoma agree[d] to be bound by the Agreement and Declaration of Trust . . . which is incorporated by reference into this Agreement."[2] The Agreement and Declaration of Trust, which

---

[2] *Neshoma Orchestra and Singers, Inc. v. Am. Fed'n of Musicians and Employers' Pension Fund*, No. 17-cv-02640-JGK (S.D.N.Y. Dec. 8, 2017), ECF No. 38-5, at 6 art. V § 4.

governed the Fund, in turn, granted "[t]he Trustees . . . full authority to adopt rules and regulations governing the determination and payment of withdrawal liability, consistent with the statute and any governmental regulations promulgated under it"; it further provide[d] that "such rules and regulations adopted by the Trustees shall be binding on all Employers."[3] The rules and regulations concerning withdrawal liability (the Fund rules) provide that "the employer may initiate a binding arbitration regarding the assessment *by making a formal filing with the American Arbitration Association*."[4]

As part of their CBA, the parties agreed that any arbitration would be filed with and therefore governed by the AAA rules, which, as relevant here, required Neshoma to send the AAA a $8,200 filing fee in order to initiate arbitration. On July 31, 2009, the CBA between Neshoma and the Union expired, however the terms of the agreement remained in force until a new agreement would be reached. After years of failed renewal negotiations, Neshoma stopped making pension contributions in July 2012.

By letter dated August 27, 2015, the Fund notified Neshoma that, as of June 8, 2013, Neshoma had effected a complete withdrawal from the Fund and therefore was liable for withdrawal liability in the amount of $1,111,124. The Fund demanded payment and informed

---

[3] *Id*., ECF No. 38-3, at 62 § 13.1.

[4] App'x 51 (emphasis added).

Neshoma of its right, under 29 U.S.C. § 1399(b)(2)(A), to request review of the assessment within 90 days.

By a letter dated August 31, 2015, Neshoma disputed its withdrawal from the Fund and contended that the payment demand was excessive. Neshoma also argued that the Fund's assessment of withdrawal liability should be rescinded under the "labor dispute" exception in 29 U.S.C. § 1398. Neshoma also "demand[ed]" commencement of arbitration proceedings.[5]

On September 21, 2015, the Fund responded to Neshoma, stating that it considered Neshoma's August 31, 2015 letter to be a request for review under 29 U.S.C. § 1399(b)(2)(A). The Fund confirmed its determination that Neshoma had withdrawn from the Fund and that the sought-after payment amount was correct. This letter began a 60-day clock for Neshoma to initiate arbitration under 29 U.S.C. § 1401(a)(1)(A), which expired on November 20, 2015.

On January 11, 2016, Neshoma sent the AAA a request to arbitrate the Fund's assessment and a check for $275.00. By letter dated March 2, 2016, the Fund informed Neshoma that it had not paid the first two installment payments on the assessment (which came due on October 26, 2015) and that if payment was not received within 60 days after receipt of the letter, Neshoma would be in default under 29 U.S.C. § 1399(c)(5) which triggered the Fund's right to immediate

---

[5] App'x 62.

payment. Neshoma has never made any payments. On April 12, 2017, the Fund brought this action to collect the withdrawal liability amount.

Meanwhile, Neshoma and the Union were in the process of negotiating a successor CBA to the one that expired on July 31, 2009. Neshoma filed a third-party complaint against the Union, alleging that during a negotiation held on October 7, 2015, the Union's counsel, Harvey Mars, promised that if Neshoma entered into a new CBA, the Union would ensure that the Fund would expunge the claimed withdrawal liability assessment. Neshoma argued that, in reliance on this promise, it executed the proposed successor CBA, but that the Union did not honor this promise.

On May 23, 2018, the district court granted the Fund partial summary judgment in the full amount, holding that Neshoma had failed to timely initiate arbitration, fixing the amount of withdrawal liability and precluding Neshoma's ability to challenge it. The district court also dismissed the amended third-party complaint against the Union, finding that Neshoma's claim was preempted by the NLRA.

## DISCUSSION

On appeal, Neshoma argues that it did, in fact, comply with "the statutory and regulatory requirements for commencing an ERISA arbitration to contest the assessment," and, in the alternative, because the AAA's arbitration procedures were not "fair and

equitable," Neshoma was not required to timely invoke arbitration.[6] Neshoma also argues that the NLRA does not apply to its third-party action against the Union, which therefore should not have been dismissed as preempted.

Our standard of review for both motions to dismiss and motions for summary judgment is *de novo*.[7]

**I. Whether Neshoma Properly Initiated Arbitration**

ERISA provides that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination [of withdrawal liability] made under sections 1381 through 1399 of this title shall be resolved through arbitration."[8] This Circuit has held that "[d]isputes over withdrawal liability determinations are to be resolved by arbitration, as provided in 29 U.S.C. § 1401(a)(1)."[9] ERISA provides that, after receiving a pension fund's notice of withdrawal-liability assessment and demand for payment, an employer has 90

---

[6] Appellant's Br. at 17, 19.

[7] *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (motion to dismiss); *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 763 (2d Cir. 2002) (summary judgment)).

[8] 29 U.S.C. § 1401(a)(1).

[9] *ILGWU Nat. Ret. Fund v. Levy Bros. Frocks*, 846 F.2d 879, 881 (2d Cir. 1988).

days to ask the fund to review the assessment and schedule of payments.[10]

Following this request for review, ERISA sets forth a schedule for an employer to initiate[11] arbitration to challenge the withdrawal liability assessment as follows:

> Any dispute between an employer and the plan sponsor of a multiemployer plan concerning the determination made under sections 1381 through 1399 of this title shall be resolved through arbitration. Either party may initiate the arbitration proceedings within a 60-day period after the earlier of:
>
> (A)    the date of notification to the employer under section 1399(b)(2)(B) of this title, or
>
> (B)    120 days after the date of the employer's request under section 1399(b)(2)(A) of this title.

---

[10] 29 U.S.C. § 1399(b)(2)(A).

[11] In support of its position, Neshoma also points to 29 C.F.R. § 4221.3, a Labor Department regulation interpreting ERISA.  We do not view this regulation as relevant here.  Although it generally discusses the initiation of arbitration, it does not define "initiation," and it therefore does not advance the analysis.

> The parties may jointly initiate arbitration within the 180-day period after the date of the plan sponsor's demand under section 1399(b)(1) of this title.[12]

In the event arbitration is not initiated, the withdrawal liability becomes "due and owing" as set forth in the plan sponsor's payment schedule and the plan sponsor may bring a collection action in court.[13] Moreover, this Circuit has held that we will not "disregard the clear language of the statute in order to relieve the Company of the consequences of its failure to meet the time limitations imposed by the Act."[14] "Congress intended that disputes over withdrawal liability would be resolved quickly, and established a procedural bar for employers who fail to arbitrate disputes over withdrawal liability in a timely manner."[15]

Neshoma first contends that its August 31, 2015 letter was sufficient to initiate arbitration and, thus, the district court lacked jurisdiction. In the alternative, Neshoma argues that the AAA

---

[12] 29 U.S.C. § 1401(a)(1).

[13] *See Div. 1181 Amalgamated Transit Union-New York Employees' Pension Fund v. Logan Transp. Sys., Inc.*, 293 F. Supp. 3d 336, 346 (E.D.N.Y. 2018) (citation omitted).

[14] *New York State Teamsters Conference Pension & Ret. Fund v. McNicholas Transp. Co.*, 848 F.2d 20, 23–24 (2d Cir. 1988).

[15] *ILGWU Nat. Ret. Fund*, 846 F.2d at 887 (citing 29 U.S.C. § 1401(b)(1)).

procedures are not fair nor equitable and, therefore, are unenforceable. These arguments are without merit.

In that letter, the relevant language stated:

> Should the Pension Fund not withdraw its demand for payment of withdrawal liability based upon the labor dispute exception, please consider this letter as a demand for arbitration as to the issue of liability and the calculation of liability. Please provide me with the procedures for the actual arbitration as I have been unable to locate same.[16]

We easily conclude that Neshoma failed to timely initiate arbitration.

First, the agreed-upon rules in the pension agreement between the parties require that any arbitration demand must be filed with the AAA, which Neshoma did not do until January 2016, nearly two months after the November statutory deadline. Furthermore, it is undisputed that Neshoma was aware of this requirement the previous September. The Fund had attached a copy of the rules to its September 21, 2015 letter which expressly stated that the "Fund's rules require use of the American Arbitration Association and specify that arbitration may be initiated only by a formal filing with the AAA."[17]

---

[16] App'x 62.

[17] App'x 66.

Neshoma cites numerous cases to press its argument that its August 31, 2015 letter met the "minimal requirements" of an arbitration demand.[18] All of the cases are inapposite, however, and further undermine Neshoma's contention. Unlike Neshoma, the party seeking arbitration in those cases did not initially agree to be bound by the Fund rules, which specify that the demand for arbitration be sent to the AAA. In fact, the cases make clear that, while 29 U.S.C. § 1401(a)(1) does not *require* parties to initiate arbitration pursuant to the AAA rules, courts will find that the parties failed to initiate arbitration "where the trust funds' rules specifically required the employer to initiate arbitration pursuant to AAA rules."[19] Neshoma does not address the critical distinction between parties who have initially agreed to initiate arbitration by "making a formal filing" with the AAA and those who have not. [20] If an employer has

---

[18] *See Div. 1181 Amalgamated Transit Union-New York Employees Pension Fund*, 293 F. Supp. 3d 336; *Operating Eng'rs' Pension Tr. Fund v. Fife Rock Prods. Co.*, No. C 10-697 SI, 2011 U.S. Dist. LEXIS 9045, 2011 WL 227665 (N.D. Cal. Jan. 24, 2011); *Teamsters-Employers Local 945 Pension Fund v. Waste Mgmt. of N.J., Inc.*, Civil No. 11-902 (FSH), 2011 U.S. Dist. LEXIS 59090, 2011 WL 2173854 (D.N.J. June 2, 2011).

[19] *Operating Eng'rs' Pension Tr. Fund*, 2011 WL 227665, at *5; *see also Div. 1181 Amalgamated Transit Union-New York Employees Pension Fund*, 293 F. Supp. 3d at 351 (finding that employers had, in fact, timely filed a demand for arbitration with the AAA).

[20] App'x 51. Neshoma also devotes a large portion of its brief to argue that "Once Neshoma Demanded Arbitration the Court Was Stripped of Jurisdiction." Appellant's Br. at 27. Neshoma's argument is based on its false claim that the "Lower Court accepted that Neshoma, by letter dated August 31, 2015, demanded arbitration." *Id.* at 29. Judge Koeltl did no such

committed by contract to use a certain procedure to initiate arbitration, then it must follow that procedure or suffer the consequences.

In the alternative, Neshoma argues that the $8,200 fee was unfair and inequitable and therefore excused its untimely demand for arbitration. The district court rightly noted that any defects in the procedures or the "AAA fee does not excuse Neshoma's failure to file a timely demand for arbitration together with a payment of whatever portion of the fee it could afford."[21] Had Neshoma timely filed with the AAA and submitted its filing with a lower payment amount, this issue would be properly before us.

In sum, we conclude that, in the ERISA context, the parties must comply with the arbitration rules specified in their agreement. Here, Neshoma failed to comply with its obligations under the agreed-upon Fund rules to timely initiate arbitration. We, therefore, AFFIRM.

**II.     Neshoma's Third Party Complaint Against the Union**

Neshoma argues that the Union made material misrepresentations during collective bargaining negotiations.

---

thing. We do not address this argument because the district court did not err in finding that Neshoma had not appropriately demanded arbitration.

[21] *Am. Fed'n of Musicians & Employers' Pension Fund v. Neshoma Orchestra & Singers, Inc.*, No. 17-CV-2640 (JGK), 2018 WL 2341551, at *6 (S.D.N.Y. May 23, 2018).

Specifically, Neshoma alleges that the Union's counsel stated that the withdrawal liability assessment would "go away" if Neshoma agreed to the terms of the new collective bargaining agreement with the Union.[22] Neshoma argues that the district court erred in granting the Union's motion to dismiss on the basis that, because the claim was preempted by the NLRA, the district court lacked subject matter jurisdiction.[23] Neshoma contends that the NLRA does not apply to its complaint against the Union and, therefore, the district court erred in granting the Union's motion to dismiss.

Neshoma argues that because this matter does not involve "wages, hours, and other conditions of employment" the NLRA does not preempt the dispute. Neshoma also argues that the NLRA does not apply because the agreement at issue is not covered by the NLRA. Both arguments are unavailing.

Section 8 of the NLRA describes the "unfair labor practices" over which the National Labor Relations Board (NLRB) has jurisdiction. These include violations of the obligation to "bargain collectively,"[24] which it defines as follows:

---

[22] App'x 35 ¶¶ 78-80.

[23] We refer to Neshoma's state law claims as a single claim because they are all premised on the same allegedly bad-faith promise by the Union.

[24] 29 U.S.C. § 158(b)(3).

to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and *confer in good faith* with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party . . . .[25]

First, Neshoma ignores the context in which the alleged fraudulent statements were made: during the course of collective bargaining and under the mandate that the parties bargain in good faith. Collective bargaining agreements specify the working conditions of employees and the NLRB has routinely recognized unfair labor practices for bad-faith bargaining during collective bargaining negotiations.[26] Assuming the allegations are true, as we are required to do on a motion to dismiss, the Union made deliberate misrepresentations (*e.g.*, "[e]verything will go away"[27]) regarding the withdrawal liability provided Neshoma signed the renewal agreement, this would certainly indicate bad-faith bargaining in violation of 29 U.S.C. § 158(b)(3), (d).

---

[25] *Id.* § 158(d) (emphasis added).

[26] *See, e.g., Avila Grp., Inc.*, 218 NLRB 633, 634 (1975).

[27] App'x 35 ¶ 79.

Therefore, we agree with the district court that Neshoma's claim that "the Union made a bad faith promise – namely, a promise to ensure that the assessment of withdrawal liability against Neshoma would be rescinded – in order to induce Neshoma to sign a renewal agreement . . . is identical to one that could have been presented to the NLRB."[28] The alleged misconduct, at a minimum, fell within the ambit of Section 8 of the NLRA and thus was preempted.[29] Therefore, the district court lacked subject matter jurisdiction over Neshoma's claim, which grew out of an allegedly bad-faith promise made during collective bargaining.[30] The NLRA gives the NLRB exclusive jurisdiction over such a claim.

---

[28] *Am. Fed'n of Musicians & Employers' Pension Fund v. Neshoma Orchestra & Singers, Inc.*, No. 17-CV-2640 (JGK), 2018 WL 2338764, at *3-4 (S.D.N.Y. May 23, 2018), *appeal withdrawn sub nom. Neshoma Orchestra & Singers, Inc. v. Associated Musicians of Greater New York Local 802, AFM, AFL-CIO*, No. 18-1884, 2018 WL 4627066 (2d Cir. Aug. 21, 2018).

[29] *See San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 245 (1959) ("When an activity is arguably subject to s 7 or s 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.").

[30] *See, e.g., Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 661 (7th Cir. 1992) ("The plaintiffs' common law fraud and misrepresentation claim against the defendants is identical to a claim which could have been pursued before the NLRB."); *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1516–17 (11th Cir. 1988) (noting that plaintiffs "raise[d] claims that are in substance allegations that the Company breached its duty to bargain in good faith in negotiating the concessions"); *Serrano v. Jones & Laughlin Steel Co.*, 790 F.2d 1279, 1286 (6th Cir. 1986) ("No matter how it is stated, the gravamen of the three fraud charges is that J & L did not bargain in good faith in obtaining concessions from the Union in the July agreement.").

Neshoma's second argument is that the Union did not represent a majority of the employees at the time of the negotiations and, thus, any negotiations could not amount to collective bargaining subject to the NLRA. The district court correctly rejected this argument.

An April 2014 agreement signed by Neshoma and the Union recognized the Union as the sole and exclusive bargaining representative for all musicians employed by Neshoma. This written acknowledgement was sufficient evidence that the Union enjoyed status as the exclusive bargaining agent.[31] Further, the district court rightly noted that the April 2014 agreement refers to the former agreement between the parties as a "collective bargaining agreement" and, accordingly, there is a "rebuttable presumption of majority status '[a]t the end of the certification year or upon expiration of the collective-bargaining agreement.'"[32] On appeal, Neshoma does not point to any evidence to support its contention that the Union was not the exclusive bargaining agent. Thus, we easily conclude that the district court did not err in holding that the NLRA applied to the

---

[31] *Am. Fed'n of Musicians & Employers' Pension Fund*, 2018 WL 2338764, at *4.

[32] *Id*. (quoting *Auciello Iron Works, Inc. v. N.L.R.B.*, 517 U.S. 781, 786 (1996)).

claim in the third party-complaint and that the claim was, therefore, preempted.

In sum, we hold that the district court did not err in its well-reasoned opinions.  Neshoma did not timely demand arbitration and the NLRA preempts its claim that the Union bargained in bad faith. Accordingly, we AFFIRM.

## CONCLUSION

For the reasons stated above, we AFFIRM the judgment of the district court.